**Chase LIHS and Alexandra Lihs, Minors and by their Next Best Friend, Kimberly LIHS, Appellants,**

v.

**Monica LIHS, Appellee.**

**No. 92–1317.**

Supreme Court of Iowa.

Aug. 25, 1993.

Eric Borseth of Borseth & Greene Law Office, Pleasant Hill, for appellants.

Thomas P. Schlapkohl, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and LAVORATO, JJ.

McGIVERIN, Chief Justice.

The question here is whether the court has authority to order visitation between siblings when the parent the children have in common is deceased.

Petitioner Kimberly Lihs appeals from a summary judgment ruling in favor of her deceased husband's first wife, respondent Monica Lihs, denying visitation between Kimberly's children and Monica's child, who are half-siblings to each other.

In granting summary judgment, the district court ruled that minor children of a second marriage have no common law or statutory right to visitation with minor children from a first marriage. We agree and affirm.

I. *Background facts and proceedings.* Gene Lihs and Monica Lihs had one child, Jason, born in 1982, during their marriage. Gene and Monica divorced in January 1984.

Monica was awarded primary physical care of Jason. Gene was granted reasonable visitation rights with Jason, which he apparently exercised.

Gene later married Kimberly Lihs. They had two children, Alexandra, born in 1986, and Chase, born in 1990. During visitation with Gene, Jason spent time with his half-siblings. Kimberly alleges the children in fact developed a rather close relationship.

Gene committed suicide in August 1991. Jason apparently has seen his half-brother and half-sister very little since Gene's death.

Kimberly subsequently filed a petition on behalf of Alexandra and Chase seeking sibling visitation with Jason.

In response, Monica filed an answer and a motion for summary judgment contending the court lacked authority to mandate visitation as requested.

The district court granted Monica's motion and dismissed Kimberly's petition, ruling that minor children of a deceased's second marriage have no common law or statutory right to visitation with minor children of the deceased's first marriage. The court stated that Monica possessed a common law veto power over visitation with any third-party other than Jason's father. The court further stated that Iowa Code section 598.35 (1991), Iowa's grandparent visitation statute, modifies this veto power only to the extent of allowing visitation, under certain conditions, with a child's grandparents. The court expressly declined to extend this modification beyond the text of the statute, which makes an exception to the parental common law veto power only for the grandparents of the child.

Kimberly appealed. In a separate division of the petition Jason's paternal grandparents sought visitation under section 598.35, which the district court granted. That action is not involved in this appeal.

We review the district court's ruling granting summary judgment for errors at law. Iowa R.App.P. 4. Summary judgment is proper only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Brown v. Monticello State Bank*, 360 N.W.2d 81, 83–84 (Iowa 1984). On review we determine whether a genuine issue of fact exists and whether the law was applied correctly. *Id.* at 84.

The record here consists of the pleadings, motion for summary judgment, resistances, a statement of undisputed facts, and affidavits.

II. *Sibling visitation.* It is well settled in Iowa that a custodial parent has a common law veto power over visitation between the child and all other third parties, except the noncustodial parent. *In re Marriage of Freel*, 448 N.W.2d 26, 27–28 (Iowa 1989); *Olds v. Olds*, 356 N.W.2d 571, 572–73 (Iowa 1984).

The legislature, in 1975, saw fit to make a statutory exception to this common law rule by enacting Iowa Code section 598.35, Iowa's grandparent visitation statute. Section 598.35 allows grandparents of a minor child to petition for visitation with such child under the limited circumstances specified in the statute. Interpreting that statute, we held grandparent petitioners are not entitled to visitation under this statute unless they fit into one of the specific situations listed in the section. *Olds*, 356 N.W.2d at 573–74 (grandparents denied visitation because they did not fit into any of the situations detailed in the statute).

In *Freel*, we stated that the legislature, in enacting section 598.35, evidently acted deliberately in "limiting outside visitation privileges to grandparents." *Freel*, 448 N.W.2d at 28 (citing *Barnes v. Department of Transp.*, 385 N.W.2d 260, 263 (Iowa 1986)). We assumed the limitation was deliberate because " 'legislative intent

is expressed by omission as well as inclusion. The express mention of certain conditions of entitlement implies the exclusion of others.' " *Freel*, 448 N.W.2d at 28 (quoting *Barnes*, 385 N.W.2d at 263).

The situation in *Freel* was somewhat similar to the present one. In *Freel* the petitioner, Tracy, was the mother of two children who were half-siblings to Travis, who had a different mother. Tracy previously had cared for Travis along with his half-siblings. We stated that Travis would not likely see his half-sisters unless Tracy was granted visitation with him. We also said it would be in Travis' best interests to grant visitation rights to Tracy. We concluded, however, as we did in *Olds*, 356 N.W.2d 571, that the court in this situation has no authority, absent a statute, to mandate visitation.

There are sound policy reasons for limiting visitation with third parties other than a noncustodial parent. For example, the common law rule giving a custodial parent veto power over visitation between the child and third parties other than the noncustodial parent

demonstrates a respect for family privacy and parental autonomy. The rule recognized that the government is ill-equipped to dictate the details of social interaction among family members. It also recognizes that the parenting right is a fundamental liberty interest that is protected against unwarranted state intrusion.

*Olds*, 356 N.W.2d at 574.

Also, we have pointed out that courts that give a custodial parent veto power do so on the basis that judicial enforcement of additional visitation would divide and thereby hamper proper parental authority, force the child into the midst of a conflict of authority and possible ill feelings between the parent and other persons, and coerce what should remain a moral obligation rather than a legal obligation. *Olds*, 356 N.W.2d at 573.

The legislature has clearly limited modification of this common law rule only as to a child's grandparents, and even then only in

specific situations. Were we to infer from section 598.35 a general intent to extend visitation to other third parties where it would arguably be in the best interests of the child, we would have no clear guidelines as to where such visitation should stop. For example, claims for visitation could arise from siblings, aunts, uncles, and other persons with special relationships. With so many potential petitioners, a court would have to decide which petitioners are more deserving of visitation than others, and how much time each petitioner should receive with the child. It could be chaotic, at best, assigning so many diverse visitations to an already limited number of weekends and holidays.

We see no reason to stray from the clear course, set down by the common law and the legislature in section 598.35, of limiting visitation with third parties, other than the noncustodial parent, to a child's grandparents.

Other states that have granted visitation to siblings have done so pursuant to statutes explicitly permitting such visitation. *See, e.g., Pullman v. Pullman*, 234 N.J.Super. 383, 560 A.2d 1276 (Ch.1989) (construing N.J.S.A. 9:2–7.1); *State ex rel. Noonan v. Noonan*, 145 Misc.2d 638, 547 N.Y.S.2d 525 (Sup.1989) (construing Domestic Relations Law sec. 71).

In *Sandor v. Sandor*, 444 So.2d 1029 (Fla.App.1984), a case strikingly similar to our present one, the second wife of an absent husband petitioned the court for visitation between their minor child and the minor children of her husband's first marriage. All the children had at one point lived together with their father and his second wife. *Id.* at 1030. The Florida court held that grandparents, under Florida's grandparent visitation statute, were the only parties other than a noncustodial parent who were allowed to petition for visitation. The court refused to infer from the grandparent visitation statute a general intent to permit visitation with third parties that may be in the best interests of the children. *Id.* The court denied the petition for visitation between the half-siblings. *Id.*

III. *Disposition.* No doubt it would be in the best interests of Jason, Alexandra, and Chase if Kimberly and Monica could come to their own agreement permitting visitation between these children. Until such a time, however, we must conclude that Kimberly's children have no common law or statutory right to visitation with their half-sibling, Jason.

**AFFIRMED.**