In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Megan WEMARK, Shawn Wemark, Robert (a/k/a Robby), Eugene Wemark, Appellees.

Michael CASPER and Wanda Casper, Guardians and Conservators of Megan Wemark, Shawn Wemark and Robert Eugene Wemark, Wards, Appellants,

v.

Stacy BUSHMAN and Bobbi Jo Wemark–Bushman, Appellees.

No. 93–1483.

Court of Appeals of Iowa.

Sept. 16, 1994.

Andrew F. Van Der Maaten of Anderson, Wilmarth & Van Der Maaten, Decorah, for appellants.

Dale L. Putnam of Putnam & Strand, Decorah, for appellees.

Sherry Nichols of the Larson Law Office, Decorah, as guardian ad litem for minor children.

Considered by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

SACKETT, Judge.

The primary issue before us is whether the trial court should have ordered visitation between three children and their adult half sibling. The children are under the guardianship [1] of an aunt and uncle. We affirm the trial court.

Megan Wemark, Shawn Wemark, and Robert Wemark came to be in need of a guardian when their mother, Melissa Wemark, was murdered and their father, Robert Wemark, Sr., was incarcerated and charged with the murder. The need continues because their father now has been convicted in the district court of first-degree murder of their mother, and he is serving a life sentence.

Megan, born in December 1983, Shawn, born in June 1987, and Robert, born in April 1990, were fortunate in that both sides of their family wanted to care for them. Unfortunately, both sides, while operating under the best of intentions, have not been able to work together.

In January 1993, shortly after their mother's death and their father's incarceration, a petition for an appointment of a guardian for the children was filed with the district court. There followed several hearings on the issues of temporary guardian, conservators and visitation. Finally, on September 1, 1993, the court appointed Michael Casper and Wanda Casper as guardians [2]; continued prior orders allowing visitation between the children and Bobbi Jo Wemark–Bushman and set a motion for adjudication of law points, filed by the Caspers, for hearing. Then on September 28, the trial court denied the motion for adjudication of law points as untimely, and this appeal followed.

Michael Casper is Melissa Wemark's brother and the children's uncle. Wanda is Michael's wife. Bobbi Jo Wemark–Bushman is one of the children [3] born to Robert Wemark's first marriage. Bobbi Jo Wemark–Bushman is the three children's half sister. Stacy Bushman is Bobbi Jo Wemark–Bushman's husband. Stacy and Bobbi Jo Wemark–Bushman had requested guardianship. They had visitation rights established early in the proceedings.[4]

The Caspers appeal the September 1, 1993 order and the September 28, 1993 order. Caspers contend: (1) the trial court should not have failed to rule on their motion for adjudication of law points; (2) the district court should not have provided for Bobbi Jo Wemark–Bushman and her husband to have visitation; and (3) the court costs should have been assessed against Bushmans. We affirm.

■ The initial question is our scope of review. Iowa Code section 633.33 (1993), with respect to probate proceedings in general, provides:

[a]ctions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity.

Iowa Code section 633.555 (1993) deals more specifically with the opening of guardianships and provides:

[a]ll other pleadings and the trial [on the guardianship petition] shall be governed by the Rules of Civil Procedure. The cause

---

1. The aunt and uncle also were appointed conservators. The issue before us is only one of visitation, therefore, we are only concerned with the guardianship.

2. In appointing Caspers, the court considered the fact Melissa had drawn a will requesting their appointment.

3. Robert has four children from an earlier marriage. Three of the children are adults and the fourth child, at the time of trial, was sixteen and living with his mother. These children were raised by their mother after the dissolution except for a time that Bobbi Jo Wemark–Bushman lived with her father and stepmother. The children also visited their families, and there is a bond between the children of the two families.

4. There was litigation after the visitation rights were established seeking to decrease the amount of the Bushmans' visitation. At these hearings, there were no requests not to allow any visitation.

shall be tried as a law action, and either party shall be entitled to a jury trial if demand is made therefore as provided by the Rules of Civil Procedure.

In view of the specific language of these statutes, the legislative intent to provide a trial at law in an involuntary guardianship is clear. *In re Guardianship of Murphy,* 397 N.W.2d 686, 688 (Iowa 1986). Because our review is on error, we will affirm if there is substantial evidence to support the trial court's findings. *Id.*

The Caspers' motion for adjudication of law points asked the court to adjudicate the following point of law:

Does a half sister have a common law or statutory right to visitation with the minor children (wards) of the guardianship?

The trial court found the motion not timely.

■ The crux of the Caspers' appeal is the trial court should have determined as a matter of law Bobbi Jo Wemark–Bushman, as a half sister, had no common law or statutory right to visitation, and we should reverse the trial court's order allowing her visitation.

We do not find the issue of whether Bobbi Jo Wemark–Bushman has a common law or statutory right to visitation to be relevant to the issue of whether the trial court should have allowed visitation by Bobbi Jo Wemark–Bushman and her husband.

The Caspers rely on *Lihs v. Lihs,* 504 N.W.2d 890 (Iowa 1993), to support their position. *Lihs* involved the children of Gene Lihs, deceased. Gene had children by two marriages. Gene's second wife asked the court to order visitation between her children and their half sibling who was in the custody of her mother, Gene's first wife. Gene's first wife objected to the requested visitation. In affirming an order on summary judgment dismissing the action, the court reiterated that, at common law, a custodial parent has veto power over visitation between the children and all other third parties except the noncustodial parent. *Lihs,* 504 N.W.2d at 892. The position of the Caspers is *Lihs:* (1) supports the proposition siblings have no common law or statutory right of visitation; and (2) we should determine, because Bobbi Jo Wemark–Bushman has no common law or

statutory right of visitation, the trial court erroneously ordered visitation. We agree with Caspers that *Lihs* supports the proposition siblings have no common law or statutory right of visitation. We disagree with Caspers that, because of that proposition, Bobbi Jo Wemark–Bushman should be denied visitation.

■ In *Lihs,* the child was in the custody of her mother, a biological parent, and the holding hinged on the veto power of the biological custodial parent. The Caspers are not custodial parents. The fact Caspers are guardians does not cloak them with all the rights of custodial parents. The Caspers' right to custody comes not from the common law rights of a parent, but from the order of the court. When the Caspers secured their appointment and qualified as guardians, they submitted themselves to the jurisdiction of the court making the appointment and agreed to be subject to the orders entered by the court. *In re Guardianship and Conservatorship of Ankeney,* 360 N.W.2d 733, 736 (Iowa 1985). The court having jurisdiction of a guardianship is the superior guardian, and the guardian is subject to its control and supervision. *See id.*

■ As guardians, the Caspers are responsible for the day-to-day decisions made for the children's welfare. *Id.* at 737. The courts normally will not interfere with the Caspers' decisions except when the evidence clearly shows the best interests of the children dictate such interference. *See id.* While, as guardians, the Caspers' right of custody and control of the children extend to refusing to permit other persons to have access to the children, this power is also subject to the control of the court. *See id.* The court may require the guardians to permit persons to have access to the children if the best interests of the children dictate there should be visitation with another. *See id.* Visitation is not prevented only because the party seeking visitation is not entitled to it as a matter of right. *Id.*

■ We, therefore, address the Caspers' claim the trial court should not have ordered visitation with Bobbi Jo Wemark–Bushman from the children's interests rather than

looking for a statutory or common law right of visitation possessed by the sibling. *See Olds v. Olds,* 356 N.W.2d 571, 572 (Iowa 1984) (cited in *Ankeney,* 360 N.W.2d at 737).

The only conclusion that can be drawn from this record is the contact between the children and Bobbi Jo Wemark–Bushman should be maintained. Bobbi Jo Wemark–Bushman is a half sibling and Michael Casper is an uncle. Furthermore, the issue of whether visitation by Bobbi Jo Wemark–Bushman is in the children's best interests has been addressed and decided by the court in prior orders in this proceeding. No appeal has been taken from these orders. The court, in earlier orders, found:

> Bobbi Jo [Wemark–Bushman] has had a close relationship with her younger sisters and brother. She lived with [the children's parents] ... [when] Megan was a baby.... Later, she often baby-sat for Megan. All three children were baptized ... Bobbi Jo [Wemark–Bushman] served as a sponsor for all three children. Jeremy [another half-brother] has also enjoyed a very close relationship with his younger siblings.... It is not in the children's best interest to severely restrict their contacts with the older siblings [Bobbi Jo Wemark–Bushman] based on the evidence presented.

There was no claim made during the hearing that resulted in the order from which appeal was taken that the circumstances concerning the need for the children to visit with Bobbi Jo Wemark–Bushman had changed.

Furthermore, our review of the record on appeal convinces us the trial court's findings in earlier orders that contact and visitation with Bobbi Jo Wemark–Bushman should be maintained are supported by substantial evidence. *Murphy,* 397 N.W.2d at 688. We note the evidence of the close relationship the children had with half siblings and their need to keep in contact with their father's side of the family. We note, also, the Caspers have four children of their own, ranging in age from five to fourteen, in their home. Bobbi Jo Wemark–Bushman and her husband have no children. Visitations with Bobbi Jo Wemark–Bushman and her husband afford the children more individualized atten-

tion and the opportunity to bond with each other as siblings without the presence of their four cousins.

The record also contains the testimony from Dennis Stamberger, a counselor with LaCrosse Lutheran who counseled Shawn and Robert, that:

> This [Bobbi Jo Wemark–Bushman] is the other side of their family. They should continue to know them; ... [and] I wouldn't ever want to eliminate Stacy and Bobbi Jo [Wemark–Bushman] from them, ...

We recognize there have been problems because of too much shifting between the homes. This appears to have been resolved.

It is understandable there is animosity between the children's mother's family and their father's family. The parents were separated at the time of the murder. Melissa's family has every reason to harbor resentment and bitterness toward Robert's family as a result of the murder. We would hope there would be an effort made for the children's sake to attempt to put this bitterness away. These children have been dealt two extremely upsetting blows in their life, the death of their mother at their father's hand and a father incarcerated for life on a first-degree murder charge. They are going to need all the love and concern both of these families can give.

Caspers' last contention is the Bushmans should have been assessed the court costs. Iowa trial courts have considerable discretion in fixing costs. *See In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show the trial court abused its discretion. *See id.* We find no abuse of discretion.

**AFFIRMED.**