**IN THE COURT OF APPEALS OF IOWA**

No. 16-0668
Filed August 16, 2017

**IN RE THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF MARVIN D. WHETSTONE, Ward**

**JOHN KEVIN WORMLEY and JOAN REED,**
        Appellants,

vs.

**LYNN BOESET,**
        Appellee.
_____

        Appeal from the Iowa District Court for Adair County, Peter A. Keller, Judge.


        Former attorneys-in-fact appeal from an adverse appointment of guardian and conservator.  **AFFIRMED.**


        Charlotte Sucik and Benjamin J. Bragg of Abendroth & Russell Law Firm, Urbandale, for appellants.

        Doyle Sanders of Beving, Swanson & Forrest, P.C, Des Moines, and Catherine M. Lucas and Brianna Vaughn of Bradshaw Fowler Proctor & Fairgrave, P.C., Des Moines, for appellee.

        Breanna Lea Young of Nelson Young & Braland, Earlham, guardian ad litem for ward.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins JJ.

**MULLINS, Judge.**

On January 26, 2016, Meleah Whetstone filed a petition for involuntary appointment of guardian and conservator, naming her father, Marvin Whetstone, as the proposed ward. At that time, Marvin's step-son, John Kevin Wormley, and Marvin's sister, Joan Reed, were acting as his attorneys-in-fact pursuant to a power of attorney Marvin had previously executed. After a hearing on March 3, the court issued orders naming Lynn Boeset, an unrelated party, as Marvin's guardian and conservator. Wormley and Reed appeal.

## I.     Background Facts and Proceedings

Marvin is eighty-six years old. He has been diagnosed with anxiety disorder, Parkinson's disease, dementia, Alzheimer's disease, and type 2 diabetes. Marvin has lived in the Stuart Community Care Center, a nursing home, since February 2011.

Marvin has three biological children: Meleah, Dan Whetstone, and Bruce Whetstone. The three children do not have regular contact with Marvin. Meleah lives in Arizona, Bruce lives in California, and Dan lives in Toddville, Iowa.

Over the years, Marvin executed several documents relating to care decisions. In 2003, he executed a durable power of attorney for health care decisions, naming Vera Whetstone (his then-wife) his agent, Meleah his contingent agent, and Bruce his second contingent agent. In 2012, he executed a durable power of attorney for health care decisions and a durable general power of attorney, naming Wormley and Reed his co-agents on both. In July 2015, he executed a durable power of attorney for health care decisions naming

Meleah his agent, Reed his first contingent agent, and Wormley his second contingent agent.

In August 2015, Marvin's physician wrote a letter stating Marvin was unable to drive, sign any legal documents, or make major decisions. In November 2015, Wormley presented Marvin with a document to revoke the July 2015 durable power of attorney. At the time of trial, Meleah was under the impression the July 2015 document had been revoked. The nursing home also acted as though the 2012 document controlled.

A social worker from the care center reported several concerning incidents involving Wormley. When Marvin was admitted to the care center, the family—Vera, Meleah, and Wormley—got into an argument, and the center called the police. Wormley once demanded entry into a board meeting for the care center and was finally admitted only after protesting repeatedly. Wormley denied that description of events and stated he was allowed into the meeting with no issue. At another time, Wormley reported to Marvin that Wormley had lost a check, and Marvin became so agitated he attempted to leave the facility on his own to help Wormley search for the check. Wormley attempted to provide Marvin with a motorized wheelchair, although Marvin was unable to drive one, and the care center had to stop Wormley from doing so to protect Marvin. Even after Marvin failed a test to drive the wheelchair, Wormley attempted to have Marvin drive it. The care center and Marvin's physician had also made reports to the department of human services about suspicions of elder abuse and financial exploitation, but disposition of those allegations is unclear in the record on appeal. The social worker testified the care center was considering evicting Marvin if Wormley

remained Marvin's agent but admitted she did not think evicting him was in his best interests.

Boeset owns United Advocacy Services, a company that provides guardianship and conservatorship services to individuals. Boeset has no connection to the family involved but was recommended to Meleah by the care center's director. Boeset, however, has little to no experience managing a farm, and appointing her would require hiring a separate company to manage Marvin's farm.

Marvin's guardian ad litem (GAL) prepared a thorough report. Near the end of the report, the GAL listed concerns with Boeset and Wormley. As to Boeset:

> The expense.
> The need and additional expense to hire a farm management company [estimated at 6–10% of gross farm revenue].
> The limitations this could place on Marvin in regard to visitors and trips away from the nursing home, to the farm or other locations.

And as to Wormley:

> Appears to be controlling of Marvin.
> Question of whether [Wormley] has a motive for his actions.
> Acts inconsistent[ly] with Marvin's best interest, to the degree Marvin may be evicted from Stuart Community Care Center.

Ultimately the GAL recommended Boeset be named guardian and conservator, and the district court followed that recommendation.

Wormley and Reed now appeal.

## II. Analysis

Actions for involuntary appointment of guardians and conservators are triable in probate as law actions. *See* Iowa Code § 633.33 (2015). Our review is for correction of errors at law. *In re Guardianship of Murphy*, 397 N.W.2d 686, 688 (Iowa 1986). The district court's factual findings are binding on appeal if supported by substantial evidence. *In re Guardianship of M.D.*, 797 N.W.2d 121, 127 (Iowa Ct. App. 2011). We will affirm if substantial evidence supports those findings. *In re Guardianship & Conservatorship of Wemark*, 525 N.W.2d 7, 9 (Iowa Ct. App. 1994). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Fischer v. City of Sioux City*, 695 N.W.2d 31, 33–34 (Iowa 2005).

Wormley and Reed make two similar claims. They first argue the court erred in revoking the 2012 power of attorney, which they also frame as a failure by the district court to make sufficient factual findings justifying this revocation. The second argument they raise is that, if a guardian or conservator is appropriate, Boeset should not be named guardian and conservator due to her connections to the nursing home and the nursing home's "empty" threats to evict Marvin.

Substantial evidence supports the district court's conclusions. First, it is apparent a guardian and conservator are necessary for Marvin. No one disputed his medical diagnoses. There was no serious dispute that he was unable to care for and make decisions for himself. His physician questioned Marvin's decision-making capacity. He was unable to care for his personal safety or attend to

necessities of life. He has assets that need managing. These assets include a farm, which is beyond Marvin's ability to manage. Substantial evidence supports the appointment of a guardian and conservator.

Second, substantial evidence supports the conclusion Boeset is an appropriate guardian and conservator. Boeset has the capability to act as guardian and conservator and is willing to serve. *See* Iowa Code §§ 633.559 ("[T]he court shall appoint as guardian a qualified and suitable person who is willing to serve in that capacity."), .571 ("[T]he court shall appoint as conservator a qualified and suitable person who is willing to serve in that capacity."). She has served in this capacity to several other wards. Nothing in the record casts doubt on her ability to do so here as well.

We find the challenges to Boeset's appointment unavailing. Her familiarity with the nursing home is a point in her favor; presumably she can communicate easily with the nursing home as necessary. Credible evidence suggested Wormley was a distraction, at best, to Marvin, and, at worst, financially exploited him. Given the need for a guardian and conservator, Boeset was the best option available. We therefore affirm the judgment of the district court.

**AFFIRMED.**