# IN THE COURT OF APPEALS OF IOWA

No. 13-1172
Filed May 29, 2014

IN RE THE MARRIAGE OF ROBERT W. GRUNDER
AND CONNIE M. GRUNDER

Upon the Petition of
**ROBERT W. GRUNDER,**
        Petitioner-Appellant,

**And Concerning**
**CONNIE M. GRUNDER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        A husband appeals the issues of legal custody, visitation, child support,

and the division of property in the parties' dissolution decree. **AFFIRMED.**


        Shannon J. Woods and Diana L. Miller of Whitfield & Eddy, P.L.C., Des

Moines, for appellant.

        Lora McCollom Sinclair of McCollum Law Firm, P.L.L.C., West Des

Moines, for appellee.


        Heard by Doyle, P.J., Mullins, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MAHAN, S.J.**

A husband appeals the issues of legal custody, visitation, child support, and the division of property in the parties' dissolution decree. We affirm the provision of the decree granting the mother sole legal custody and physical care of the child. We agree with the provision limiting the husband to supervised visitation due to his history of substance abuse. We affirm the provision of the dissolution decree setting the husband's child support obligation. We affirm the division of property in the dissolution decree. Finally, we determine each party should pay his or her own appellate attorney fees.

### I. Background Facts & Proceedings

Robert and Connie Grunder were married in 1988. They have three children. The oldest two are now adults, while the youngest, born in 2000, is a minor. Robert filed a petition for dissolution of marriage on January 5, 2012.

At the time of the dissolution hearing on June 6, 2013, Robert was fifty-two years old. He worked as a roofer until 1993, when he injured his foot during the course of his employment. He received a lump-sum payment of $425,000 in workers' compensation benefits. Robert purchased an annuity that pays him $727.72 per month. After his injury, he worked at various part-time jobs, but had not been employed since June 2011. Robert has a history of substance abuse. He has two convictions for possession of marijuana and two convictions for possession of methamphetamine. In February 2013 Robert passed out from a methamphetamine binge and was assaulted. As a result, a portion of his intestine was removed, and he now uses a colostomy bag. Robert was living in an apartment with a female friend.

Connie was fifty years old at the time of the dissolution hearing. She is employed at Wells Fargo and earns $64,402 per year. Connie lives in the marital home with the minor child and one of the parties' adult children. She is in good health.

Robert testified he had not used illegal drugs since the incident in February 2013. At the time of the noon recess on the first day of the hearing, the court ordered Robert to have a drug test. This was based upon, "his testimony today and my observation of his behavior and demeanor today and the fact that he was considerably late for these proceedings." Robert had lunch first, then reported for a drug test, but was unable to produce a urine sample.[1] Connie testified that from Robert's behavior she believed he was still using illegal drugs. She stated he would leave the house in the night and not come home for several days. She testified that in March 2013 she found a crack pipe in the home. A week later, she found Robert and three other people smoking methamphetamine in the basement of their home.

The district court issued a dissolution decree on July 1, 2013. The court granted Connie sole legal custody and physical care of the minor child. Robert was granted supervised visitation with the child for two hours every two weeks. The court found Robert "has a serious unresolved issue with methamphetamine that he refuses to acknowledge." The court noted Robert's receipt of annuity payments and additionally imputed annual income to him of $13,260 ($8.50 per hour times thirty hours per week). Robert was ordered to pay child support of

---

[1] Robert presented himself the next day for a drug test, which was negative for controlled substances.

$309.43 per month. The court determined Robert had dissipated an investment account worth $41,236. After including this amount in the assets awarded to Robert, the court equally divided the parties' marital assets and liabilities. Robert appeals the dissolution decree.

## II.  Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court, but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

## III.  Legal Custody

Robert first contends the district court should not have considered the issue of legal custody because the parties had previously stipulated to joint legal custody of the minor child. We note there was no formal stipulation on this issue. Robert relies upon Connie's answer to the petition, but it is ambiguous—stating at one point Robert was not a proper person to share joint legal custody and then asking for joint legal custody.

In any event, during the dissolution hearing Connie's counsel informed the court she was seeking sole legal custody. Robert did not formally object to the court's consideration of this issue. Robert's counsel stated he did not believe legal custody was going to be an issue, but he did not object to the court's consideration of that issue. The court gave Robert "an opportunity to address the issue of legal custody if you feel that this has come up at the last minute." Robert

did not re-testify. He did not file a motion for a continuance or make an offer of proof. Furthermore, after the court's decision, Robert did not file a post-trial motion challenging the court's consideration of Connie's request for sole legal custody. We conclude Robert has not preserved error on his claim the issue of sole legal custody was not properly before the court. *See In re Marriage of Gensley*, 777 N.W.2d 705, 719 (Iowa Ct. App. 2009).

We proceed then to consider the merits of the court's custody decision. A decision by the court as to whether to grant the parties joint legal custody or to award one of the parties sole legal custody is based upon the factors found in Iowa Code section 598.41(3) (2011).[2] *Id.* at 714. The court's custody decision must be in the best interests of the child. Iowa Code § 598.41(1)(a). If the court does not grant joint legal custody, it must cite clear and convincing evidence to support its decision. *Id.* § 598.41(2)(b); *Gensley*, 777 N.W.2d at 714.

---

[2] These factors are:
    a. Whether each parent would be a suitable custodian for the child.
    b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
    c. Whether the parents can communicate with each other regarding the child's needs.
    d. Whether both parents have actively cared for the child before and since the separation.
    e. Whether each parent can support the other parent's relationship with the child.
    f. Whether the custody arrangement is in accord with the child's wishes and whether the child has strong opposition, taking into consideration the child's age and maturity.
    g. Whether one or both the parents agree or are opposed to joint custody.
    h. Geographic proximity of the parents.
    i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.
    j. Whether a history of domestic abuse, as defined in section 236.2, exists.
Iowa Code § 598.41(3).

In granting Connie sole legal custody, the district court found:

> [Robert] has shown himself to be a subpar participant in the life of [the child], especially in recent times when his substance abuse issues have dominated his choices and priorities. From all indications, he has been an absentee parent even though the family has technically lived under one roof until recently. His current situation can only be described as chaotic—the particulars of his daily life are unsettled at best, and the court remains convinced that [Robert] has a serious unresolved issue with methamphetamine that he refuses to acknowledge. These obstacles disqualify [Robert] from being [the child's] legal custodian.

We agree with the court's conclusions.[3] The court, which had the ability to observe the witnesses, found Robert's claim he was no longer using illegal drugs was not credible. In fact, the court was so concerned about Robert's drug use that it ordered him to have a drug test during the dissolution hearing. Furthermore, Robert's own testimony showed he was not involved in the child's life. He stated the last time he engaged in an activity with the child "[m]ight have been last year." He did not know if the child had a cell phone, or the telephone number. He acknowledged Connie paid for the child's expenses. Based on the record in this case, we conclude the court properly granted Connie sole legal custody of the child.

---

[3] The court noted Connie had obtained a temporary protective order against Robert under Iowa Code chapter 236 on May 15, 2013. At the time of the dissolution hearing there had not yet been a hearing on whether a permanent protective order should be entered. The court noted it was not making its determination on legal custody based upon a finding of a history of domestic abuse. The court stated, "[a]lthough some of the statutory indicia of such a history are present, a single incident which has yet to be fully litigated is insufficient to allow the court to make such a determinative conclusion." We also agree with the court's conclusion there is insufficient evidence in the record to show a history of domestic abuse. *See* Iowa Code § 598.41(3)(j).

## IV. Visitation

Robert asks for greater visitation with the child and requests unsupervised visitation. A court should order:

> [L]iberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

Iowa Code § 598.41(1)(a).

In general, liberal visitation is considered to be in a child's best interests. *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994). Conditions should be placed on a parent's visitation rights "only when visitation without the placement of conditions is likely to result in direct physical harm or significant emotional harm to the child, other children, or a parent." *Id.* at 5. Conditions which are imposed upon a parent's visitation must be in the child's best interests. *Id.*

Connie stated she believed Robert was not a safe person for the child to be around due to his drug use. She asked that visitation be limited until Robert completed a substance abuse treatment program. In making its decision regarding visitation, the district court relied upon the same factors used in granting Connie sole legal custody. The court additionally stated:

> [Robert] has not shown he is capable of even acting in his own best interest, as represented by the drug-induced activity that resulted in his hospitalization and surgery in February. It is unclear whether [Robert] continues to interact with other drug users, and the specific living environment the child would be subjected to is unclear at best and worrisome at worst. These factors, along with [Robert's] self-

imposed separation from [the child] in recent years convince the court that any visitation schedule should be limited in nature and supervised by an outside source.

We agree the evidence in this case shows that supervision without conditions would likely result in direct physical harm or significant emotional harm to the child. *See id.* There was evidence Robert, along with other drug users, had been using methamphetamine in the home. As the district court noted, due to Robert's drug use he was unable to keep himself safe. We affirm the district court's decision granting Robert limited and supervised visitation.

## V. Child Support

Robert claims the district court should not have imputed income to him in calculating his child support obligation. Under Iowa Court Rule 9.11(4), a court may impute income to a parent in appropriate cases. *See In re Marriage of Vanderpol*, 529 N.W.2d 603, 605 (Iowa Ct. App. 1994). A court may impute income if it finds a parent is voluntarily unemployed or underemployed without just cause. Iowa Ct. R. 9.11(4). A court should impute income only if "a written determination is made that, if actual earnings were used, substantial injustice would occur and adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties." *Id.*

Robert claims that after his injury in February 2013, he is not physically able to work. He asserts the court should not have imputed any income to him. The district court specifically found it would be a substantial injustice not to impute income to Robert. The court determined he was capable of earning $8.50 per hour and working thirty hours per week, based on his past tax returns.

We agree with the district court's findings. At the dissolution hearing, when asked if he could work, Robert answered, "I would probably start out part-time and see how it went." He stated he was trying to get his commercial driver's license and would like to get a job working twenty hours a week. His testimony showed he earned in the range of $8.50 per hour in his past part-time jobs. We conclude the district court properly imputed income to Robert under Iowa Court Rule 9.11(4). We affirm the provision of the dissolution decree setting Robert's child support obligation.

## VI. Property Division

Robert contends the district court improperly found he had dissipated a marital asset, an EquiTrust Investment Account. The court awarded the value of this account to Robert in distributing the marital assets, although the account had no value at the time of the dissolution hearing. He asked to have the property division recalculated without taking this asset into consideration.

A spouse's dissipation of assets may be considered when dividing marital property. *Fennelly*, 737 N.W.2d at 104. The court must first consider whether the alleged purpose of the expenditure of the asset is supported by the evidence. *In re Marriage of Kimbro*, 826 N.W.2d 696, 701 (Iowa 2013). If so, the court then considers whether that purpose amounts to dissipation considering: (1) the proximity of the expenditure to the parties' separation; (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage; (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other; and (4) the need for, and the amount of, the expenditure. *Id.*

Robert claims the doctrine of dissipation applies only during a period when the parties are separated. He asserts the account was liquidated in May 2012, and the parties did not separate until May 2013. We note that in *Fennelly*, 737 N.W.2d at 105, the parties were not separated, but remained living in the same home while the dissolution action was pending. Despite this, the court determined the husband had dissipated marital assets when he "failed to prove the cash advances were the result of legitimate household and business expenses." *Fennelly*, 737 N.W.2d at 106. We conclude the doctrine of dissipation may be applied in this case.

Robert also claims he adequately showed the funds from the investment account had been used for legitimate household purposes. At the time Robert liquidated the EquiTrust account it was worth $41,235.84. He testified he invested some of the money in other accounts that lost value. He also testified he used the money for living expenses but did not identify any specific household expenses other than one rent payment for June 2013. He furthermore testified he gave some of the money to his children for gas or rent.

Robert agrees he had the burden to "show how the funds were spent or the money disposed of by testifying or producing receipts or similar evidence." *See Kimbro*, 826 N.W.2d at 701. We conclude Robert did not meet this burden. As the district court found, "In the absence of proper documentation, the court concludes that [Robert] improperly dissipated or wasted the marital asset represented by the EquiTrust account." We affirm the division of property in the dissolution decree.

**VII. Attorney Fees**

Connie seeks attorney fees for this appeal. This court has broad discretion in awarding appellate attorney fees. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). An award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Considering these factors, we determine each party should pay his and her own attorney fees for this appeal.

We affirm the decision of the district court. Costs of this appeal are assessed to Robert.

**AFFIRMED.**