In re the **MARRIAGE OF James L. GILLILLAND and Mary E. Gillilland**

Upon the Petition of James L. **Gillilland, Appellant,**

and Concerning

Mary E. **Gillilland, n/k/a Mary E. Parrish, Appellee.**

No. 91–469.

Court of Appeals of Iowa.

April 28, 1992.

Arthur L. Buzzell, Davenport, for appellant.

Edward J. Cervantes, Bettendorf, for appellee.

Considered by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

OXBERGER, Chief Judge.

This appeal is concerned with the issue of whether an alimony award designed to make a spouse self-supporting should end because the spouse has remarried.

The trial court said:

It is a reversion to primitive views of mankind that the woman should necessarily be dependent upon her husband for support. The intent and purpose of this decree, as clearly stated, was to release the respondent from that kind of peonage.

Since this is a modification proceeding, we shall examine the original decree. It provides:

It is further Ordered, Adjudged and Decreed by the Court, that Respondent is awarded alimony from Petitioner in the amount of $3,500 per month, for a period of 10 years, beginning November 1, 1987, and continuing through and including October 1, 1997, at which time alimony shall cease....

If Respondent should die, the monthly alimony payments shall cease. This award contemplates that the Respondent will have been able to accumulate sufficient assets during the next ten years to allow her to support herself without any additional alimony from the Petitioner and without earned income. By agreement of the parties, the failure of the Respondent to achieve this status shall not justify extension of support from the Petitioner to the Respondent. It is the express intent of the parties that all alimony payments shall cease with the payment due of October 1, 1997.

This appeal involves a nearly twenty-year marriage. When the parties married the wife, twenty-three, was an x-ray technician. The husband was a third year undergraduate student. The husband's schooling last-

ed thirteen years, ten years during the marriage. Except for two months during the first summer of marriage, the husband attended school full time and the parties lived on the wife's income. During the last two years of the husband's residency training, the parties lived on the husband's stipend. The wife has not worked outside the home from 1978 to date.

The parties postponed having children so the wife could work to support the couple. When the wife reached thirty and the husband was finishing his school, the couple started their family. Their three children are now sixteen, fourteen, and eleven. The father was awarded custody of the children.

■ The parties signed a written stipulation concerning issues in the dissolution. The written stipulation does not provide for alimony. The trial court's decree is clear however, it's order regarding alimony was pursuant to the oral agreement. Regardless of whether the decree was agreed to or not, we are limited in our interpretation of the decree to the decree itself, and not the parties' agreement. *In Re Marriage of Shima* 360 N.W.2d 827, 829 (Iowa 1985).

■ Despite the wife's sacrifices to assist her husband to obtain his advanced degree, this case does not involve "reimbursement alimony" as set forth *In Re Marriage of Francis* 442 N.W.2d 59 (Iowa 1989). The Supreme Court in *Francis* characterized "reimbursement alimony" as being predicated "upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other...." *Id.* at 64. The court said, "'reimbursement' alimony is not subject to modification."

The court described "rehabilitative alimony":

> Because self-sufficiency is the goal of rehabilitative alimony, the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex spouses. (citation omitted) As in the case of traditional alimony, payable for life or so long

as a spouse is incapable of self-support, a change in status (e.g. remarriage) may alter the support picture and warrant a modification. (citation omitted) (remarriage shifts the burden on recipient to prove extraordinary circumstances requiring continuation of alimony.)

The following language in the original decree clearly indicates the court intended the alimony to be rehabilitative:

> This award contemplates that the Respondent will have been able to accumulate sufficient assets during the next 10 years to allow her to support herself without any additional alimony from the Petitioner and without earned income.

■ There was no appeal of the original decree. We therefore, seek to determine the meaning of words "support herself" used by the trial court. The court said: "and without earned income." Obviously the parties and the court did not expect the wife to return to the labor market and seek to improve her earning capacity. The parties apparently intended the wife should not work so she would have time for the children.

The court's choice of the words "accumulate sufficient assets" indicates the court and the parties expected the funds granted to be sufficient so the wife could invest unneeded funds for the future. In order to encourage the wife to save money from the awarded alimony, the parties and the court took away the wife's right to seek a modification if future conditions warranted. The record is not clear what the wife got in return for this concession. We do not know if it was an expectation that the husband would not seek a modification if the wife remarried or some other benefit.

We proceed to determine what the trial court intended by the following:

> This award contemplates that the Respondent will have been able to accumulate sufficient assets during the next 10 years to allow her to support herself.

Was it the court's intention that the ten years of alimony was not for ten years, but for such time up to ten years until the wife could find another man to support her.

This interpretation is not consistent with the court's plan to provide sufficient funds for the wife so she could support herself.

We do not find it necessary to determine for this appeal whether the term self-supporting means to support one's self without the aid of another person. We shall for discussion assume that a person is self-supporting if that person remarries and receives support from a new spouse.

The question is what level of living is intended by the court. Would remarriage to a new spouse earning $15,000 a year provide adequate support?

*In Re Marriage of Boyd*, 200 N.W.2d 845, 854 (Iowa 1972) the supreme court said for purposes of modification of alimony decrees the standard of living sought to be established by alimony awards is the life style established by the parties' during the marriage.

In the case at bar, the former husband's net taxable annual income is $220,000. The current husband's income is $30,000. The wife cannot support herself with the support she receives from her new husband in the manner of the life style established in the previous marriage. We find the wife has established the required record to prove extraordinary circumstances requiring continuation of alimony. We affirm the trial court on the alimony issue.

■ LIFE INSURANCE: We next consider whether the trial court was correct in refusing to modify the life insurance provisions of the original decree. We affirm the trial court on this issue. The language of the policy designates Mary as the owner of the policy. The decree adopts by reference the provisions of the stipulation. It provides that the wife is the owner of the policy. James' duty to end payments for premiums ends the same day his alimony and property settlement obligations are finished. Nothing however, is said that the insurance is related to an alimony obligation. We find the award of the policy is a property settlement, not subject to modification. We affirm the trial court's refusal to modify.

■ VISITING PARENT'S CONTACT WITH THE CHILDREN: We next consider whether the trial court was correct in denying a motion for restrictions on the visiting parent's contact with the children.

Iowa Code section 598.41(1) provides in part:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, *unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result* from such contact.... (emphasis added).

We find James has failed to clearly show it is likely that direct physical harm or significant emotional harm would result to the children if Mary was allowed liberal visitation. We affirm the trial court on this issue.

Each party will pay his or her own attorney's fees. Costs are taxed to the appellant.

AFFIRMED.