In re the MARRIAGE OF Carrie
RYKHOEK and Irvin
Rykhoek,

Upon the Petition of Carrie Genest f/k/a
Carrie Rykhoek, Appellant,

And Concerning Irvin Ryhoek, Appellee.

No. 93–949.

Court of Appeals of Iowa.

Sept. 16, 1994.

Eric Borseth of Borseth & Genest, Pleasant Hill, for appellant.

Chris Shepperd of Kreykes & Shepperd Law Office, Pella, for appellee.

Considered by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

HUITINK, Judge.

Carrie and Irvin Rykhoek were previously married and were divorced in February 1990. They were awarded joint legal custody of the minor children: Mitchell, born December 20, 1984; Carissa, born October 28, 1986; and Tyler, born September 4, 1987. Carrie was awarded primary physical care, and Irvin was given visitation rights.

After the dissolution, Carrie lived in a trailer home on her parents' land near Pella. Carrie's mother took care of the children while Carrie was at work. Eventually, Carrie and her mother had a falling out and quit communicating with each other. In June 1991 Carrie moved with the children to Des Moines, where she had a job as a word processor. Carrie remarried in June 1992 and is now known as Carrie Genest.

After Carrie moved to Des Moines, she and the children had little contact with her parents. Irvin still lives in the Pella area and would have the children there during visitation. Carrie's parents contacted Irvin and sought to see the children during Irvin's visitation time. Irvin allowed the maternal grandparents to visit the children.

When she became aware of her parents' contact with the children, Carrie asked Irvin to stop this practice, or to at least notify her in advance. In an affidavit she stated she was concerned about the children's contact with her parents because of the negative statements her mother made about her, which she felt would undermine her authority with the children. Irvin refused to comply with her wishes on this matter.

Carrie filed a petition for modification of the dissolution decree. She sought to modify the decree to provide that Irvin may not give the children to any member of her family, any person picking up the children for her family, or any other person unless the person seeking visitation had contacted her and received her permission in writing to have the children for visitation. She also requested that Irvin not be allowed to visit any member of her family while the children are in his custody, have any member of her family at his home while the children are in his custody, or allow her family to have unauthorized contact with the children.

Carrie filed a motion for summary judgment in which she alleged she should be allowed to determine who could visit the children. Irvin also filed a motion for summary judgment, claiming Carrie has not shown a sufficient change in circumstances to modify the decree.

The district court granted Irvin's motion for summary judgment and denied Carrie's motion. The court found there were no undisputed material facts in this case. The court determined there was a legal question as to whether Carrie, as the primary physical caretaker, could dictate to Irvin, as a joint custodian, who he can allow the children to visit. The court found Carrie's position was not supported by legal authority. The court also determined Carrie had not sufficiently shown a modification of the visitation provision of the decree would be in the children's best interests. The court dismissed Carrie's application for modification. Carrie appealed.

We review the district court's ruling granting summary judgment for errors at law. Iowa R.App. P. 4. Summary judgment is proper only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Brown v. Monticello State Bank,* 360 N.W.2d 81, 83–84 (Iowa 1984). On review we determine whether a genuine issue of fact exists and whether the law was applied correctly. *Id.* at 84.

To justify a change in visitation, a party must show there has been a change of circumstances since the dissolution decree. *In re Marriage of Fortelka,* 425 N.W.2d 671, 672 (Iowa App.1988). The burden in a modification of visitation rights is different than the burden in a child custody case. *Id.* Generally, a much less extensive change in circumstances need be shown in visitation rights cases. *Id.*

We first consider the parties' rights as joint legal custodians and Carrie's rights as the children's primary physical caretaker. In pertinent part, Iowa Code section 598.41(5) provides:

> If one joint custodial parent is awarded physical care, the court shall hold that parent responsible for providing for the best interest of the child. However, physical care given to one parent does not affect the other parent's rights and responsibilities as a legal custodian of the child. Rights and responsibilities as legal custodian of the child include, but are not limited to, equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

Iowa Code § 598.41(5) (1993).

Thus, joint custody gives both parents rights and responsibilities. *In re Marriage of Westcott,* 471 N.W.2d 73, 75 (Iowa App. 1991). Even though a parent does not receive primary physical care of his or her child, that parent continues to be the child's parent and retain all of those parental rights not granted exclusively to others in the de-

cree or otherwise surrendered by the parent. *Leaf v. Iowa Methodist Medical Ctr.,* 460 N.W.2d 892, 894 (Iowa App.1990).

The parent who is granted primary physical care has the right and responsibility to maintain the principal home of the minor child and provide for the routine care of the child. *In re Marriage of Will,* 489 N.W.2d 394, 397 (Iowa 1992). The parent having physical care must, as between the parties, have the final say concerning where the children's home will be. *In re Marriage of Frederici,* 338 N.W.2d 156, 159 (Iowa 1983).

Additionally, in the recent cases of *In re Petition of Ash,* 507 N.W.2d 400, 402 (Iowa 1993) and *Lihs v. Lihs,* 504 N.W.2d 890, 892 (Iowa 1993), the supreme court upheld the right of a custodial parent to exercise a common-law veto power over visitation between the child and all other third parties, except the parent who is granted visitation rights. We note that in *Lihs* the mother is described as the custodial parent, but the facts of the case show the mother was the primary physical caretaker.[1] 504 N.W.2d at 891. *Lihs* involved a request by half-siblings for court-ordered visitation rights. *Id. Ash* involved a request by the mother's former boyfriend, who was not the biological father, for court-ordered visitation rights. 507 N.W.2d at 401.

Both of these supreme court cases rely upon *Olds v. Olds,* 356 N.W.2d 571 (Iowa 1984). *Olds* involved a request by grandparents for court-ordered visitation. 356 N.W.2d at 572. Section 598.35, the Iowa grandparent visitation statute, provides for such court-ordered visitation. Iowa Code § 598.35 (1993). However, this statute does not apply when the grandparents seeking court-ordered visitation are the parents of the custodial parent. *Olds,* 356 N.W.2d at 574; *In re Marriage of Woodley,* 474 N.W.2d 815, 816 (Iowa App.1991). Section 598.35 applies only to those situations specified in the statute. *Lihs,* 504 N.W.2d at 892. Thus, where section 598.35 does not apply, the common-law rule applies. *In re Marriage of Freel,* ʿ448 N.W.2d 26, 27–28 (Iowa 1989).

---

1. We note that both appellate courts have often referred to the primary physical caretaker as the custodial parent and the other parent as the noncustodial parent, even though both parents have joint legal custody.

In *Olds,* the court stated a custodial parent's veto power over visitation with people other than the noncustodial parent, and as provided for in section 598.35, is granted on the ground that judicial enforcement of visitation would divide and thereby hamper proper parental authority, force the child into the midst of a conflict of authority and ill feelings between parent and grandparent, and coerce what should remain a moral rather than a legal obligation. 356 N.W.2d at 573. The common-law rule against coercing grandparent visitation over parental objections demonstrates a respect for family privacy and parental autonomy. *Id.* at 574.

We determine *Olds* dealt with a slightly different issue than the one presented to us. In *Olds,* the grandparents sought court-ordered visitation rights. *Id.* at 572. In the present case, Carrie's parents are not a party to the suit, and they are not seeking specific visitation rights of their own. Under the cases discussed above, Carrie's parents would not be entitled to court-ordered visitation under section 598.35 because their child is the physical caretaker of the children. Thus, legally Carrie could veto a request by her parents for visitation with the children. However, Carrie's veto power does not extend to Irvin, who is a joint custodial parent and who was granted visitation privileges under the dissolution decree. The question then in this case is whether Carrie's common-law veto can be used to dictate to Irvin who the children might see while they are in his care during visitation.

■ Generally, we have considered liberal visitation rights to be in a child's best interest. *In re Marriage of Stepp,* 485 N.W.2d 846, 850 (Iowa App.1992). Section 598.41(1) provides:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, unless direct physical harm or significant emotional harm to the child, other

children, or a parent is likely to result from such contact with one parent. . . .

Iowa Code § 598.41(1) (1993). Thus, we will not restrict a parent's visitation unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact. *In re Marriage of Gillilland,* 487 N.W.2d 363, 366 (Iowa App.1992).

Here, Carrie does not seek to restrict the amount of Irvin's visitation, but seeks to place conditions upon Irvin's activities with the children when he has visitation.

Generally, we have not imposed conditions on a parent's visitation. In the case of *In re Marriage of Fite,* 485 N.W.2d 662, 664 (Iowa 1992), the supreme court deleted conditions which the district court had placed on the father's visitation, which included abstinence from use of alcohol and use of profane, obscene, or abusive language during visitation. In the case of *In re Marriage of Walsh,* 451 N.W.2d 492, 493 (Iowa 1990), the supreme court deleted a condition that the father could only have visitation when no unrelated adult was present. Similarly, in *In re Marriage of Ullerich,* 367 N.W.2d 297, 299–300 (Iowa App.1985), we eliminated a condition which restricted the mother from having any adult males present in her living quarters to whom she was not married or related within the third degree of affinity or consanguinity.

■ We conclude these cases show the custodial parent can not generally exercise his or her common-law veto to dictate which persons the noncustodial parent can come in contact with during visitation. As the supreme court has pointed out, conditions on visitation may be considered demeaning. *Fite,* 485 N.W.2d at 664. Furthermore, the imposition of conditions may be used as a means to improperly restrict visitation. *Id.* Even without formal conditions in the decree, if a parent behaves irresponsibly during visitation, his or her conduct may be grounds for reduction or elimination of visitation. *Id.*

However, in some situations conditions are justified. Where a father had once failed to return the children after visitation, we approved a condition which prohibited him from removing the children from the state of their

residence during visitation. *In re Marriage of Smith*, 471 N.W.2d 70, 73 (Iowa App.1991). Also, where a father admitted he had previously engaged in acts of exhibitionism, the supreme court agreed conditions could be placed on his visitation rights. *Lamansky v. Lamansky*, 207 N.W.2d 768, 772 (Iowa 1973).

Additionally, a parent may agree to a condition on his or her visitation, such as paying all travel expenses. *See In re Marriage of Hatzievgenakis*, 434 N.W.2d 914, 916 (Iowa App.1988).

■ From these cases, we conclude a court should place conditions on a parent's visitation rights only when visitation without the placement of conditions is likely to result in direct physical harm or significant emotional harm to the child, other children, or a parent. *See* Iowa Code § 598.41(1) (1993). Any conditions which are so imposed must be in the best interests of the child.

In the present case, the district court found Carrie had no legal grounds for requesting the placement of conditions on Irvin's visitation rights. Based on this view, the court granted Irvin's motion for summary judgment. We conclude summary judgment was not appropriate in this case. We reverse the decision of the district court and remand for further proceedings using the standard for conditions on visitation rights which we have set forth.

■ Irvin seeks attorney fees for this appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Hunt*, 476 N.W.2d 99, 103 (Iowa App.1991). We determine each party should pay his or her own attorney fees for this appeal. Costs of this appeal are assessed to Irvin.

**REVERSED AND REMANDED.**

DONIELSON, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part; dissenting in part).

I concur in part and dissent in part. I would affirm the trial court.

Carrie and Irvin were divorced and the dissolution decree made the parties joint custodians of their children and awarded Carrie physical care. Carrie filed for modification of the decree to restrict Irvin's visitations and requested the following relief:

[That the trial court] modify the Decree to prohibit the Respondent [Irvin] from allowing any of the Petitioner's [Carrie's] family to visit with the children or place them in their care for any period of time and further requesting that the Respondent [Irvin] be prohibited from allowing any contact whatsoever between the Petitioner's [Carrie's] family and the minor children.

The issue is whether Carrie has shown facts which, if believed, would show a change of circumstances and grounds to justify modification of the dissolution decree.

To justify a modification, Carrie must show changed circumstances. *In re Marriage Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The circumstances to show a change of visitation are not as great as those to modify custody. *See In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa App.1985).

The trial court found the record showed Carrie's position was that:

Her relationship with her own family has deteriorated so that her family refuses contact with her;

That her family has sought to circumvent her by obtaining visitation from Irvin;

That Carrie is in a position of not knowing where her children are during their visitations with Irvin and that places Irvin in the center of a conflict between Carrie and her family; and

Irvin has assisted Carrie's family in the matter even though he knows Carrie disapproves.

Carrie claims she should control not only her time with the children but, also, the time Irvin spends with the children.

There are two questions:

The first is, can a custodial parent restrict the visitation of a noncustodial joint custodian?

And, did Carrie show that there was a factual issue concerning the interest of the children?

The evolution of our statutory law on joint custody has evidenced the legislature's strong voice that children deserve the attention and support of *both* parents even when a marriage is dissolved.

Apparently, the majority has determined Carrie does not have veto power over Irvin's visitation; a position with which I agree. I depart, though, from the majority's conclusion *Lihs v. Lihs,* 504 N.W.2d 890 (Iowa 1993), and *Olds v. Olds,* 356 N.W.2d 571 (Iowa 1984), may be applicable, in whole or in part, to the issue before us. In *Lihs,* the natural father was deceased. In *Olds,* the grandparents were seeking visitation. Neither case is instructive.

Irvin is a natural parent and a joint custodian. His status in regard to visitation is clearly defined by Iowa Code section 598.1(3) which provides:

"Joint custody" or "joint legal custody" means an award of custody of a minor child to both parents under which both parents have rights and responsibilities toward the child and *under which neither parent has rights superior to those of the other parent.* The court may award physical care to one parent only. (Emphasis supplied).

The second issue is whether there is evidence from which a fact finder could find there is a change of circumstances and the interest of the children require modification.

The only evidence of changed circumstances is Carrie at the time of the dissolution decree had a relationship with her parents and her brothers and today she does not. I do not find this to be evidence such as would support a finding for a modification. Particularly where, as here, there is no evidence the relief Carrie seeks is in the children's best interests.

There is no evidence visitation between Carrie's children and Carrie's parents and brothers poses any threat to the children.

In fact, the following portions of Carrie's affidavit illustrate that point:

While my mother has done nothing to this point to harm my relationship with my children that I know of, I think there is the very real potential for her to do so. She has a history of causing poor family relations. My mother has been involved in long-standing disputes with my father's family, specifically his two brothers for separate reasons, and is not welcome in their home. My father's family wants nothing to do with her.

I think it is completely possible that at some point in the future my mother *may attempt* to alienate the children from me or otherwise undermine my authority with my children. (Emphasis supplied).

The trial court made the observation Carrie is attempting to keep her children from her mother to force her mother to reestablish communications. The court went on to reason, "In this way, Carrie is using the children as a lever to force her mother to mend their broken relationship."

The observation is clearly evident from Carrie's affidavit where she states, in part, "I fail to see why he [Irvin] should be drawn into it. I fail to see why he [Irvin] does not understand that if it were not for his allowing visitation with my family they would have to go through me and he would not be in this situation at all."

There is nothing in this record from which a fact finder could determine Irvin's recognition of a need for the children to be in contact with their mother's extended family with whom they have had substantial bonding is harmful to the children. Absent such a showing, there is no basis to put restrictions on Irvin's visitation. The trial court should be affirmed.

While I feel summary judgment in a modification case is unusual, the trial court should be affirmed in this case. Additionally, I would order Carrie pay $1000 toward Irvin's attorney fees.