**IN THE COURT OF APPEALS OF IOWA**

No. 22-0182
Filed February 8, 2023


**IN RE THE MARRIAGE OF ERIN NICHOLE DUDNEY
AND JESSE KENTON DUDNEY**

**Upon the Petition of
ERIN NICHOLE DUDNEY,**
        Petitioner-Appellee,

**And Concerning
JESSE KENTON DUDNEY,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Decatur County, Thomas P. Murphy,

Judge.


        Jesse Dudney appeals from physical care provisions of the decree

dissolving his marriage to Erin Dudney.  **AFFIRMED AS MODIFIED AND**

**REMANDED WITH DIRECTIONS.**


        Theodore Sporer, Des Moines, for appellant.

        Erin Nichole Dudney, Decatur City, self-represented appellee.


        Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

Jesse Dudney appeals the dissolution decree from his marriage to Erin Dudney. Following a contested trial, the district court ordered joint legal custody and awarded physical care to Erin, ordered child support, and divided property. Jesse only appeals the physical-care provisions of the decree. Jesse's appellate brief is murky about what relief he seeks, but the tenor of his arguments suggests he believes that he should have physical care of the children and Erin should have limited visitation. On our de novo review, we affirm placing physical care with Erin, but we impose drug-testing conditions to further the best interests of the children.

## I. Background Facts and Proceedings

Jesse, a Marine Corps veteran, married Erin, a former high school classmate, in 2013. They share two children, born in 2014 and 2017. Erin also has four older children, three of whom are minors, from a previous marriage.

The parties lived for a time in North Dakota before eventually moving back to Iowa and settling in Weldon. Erin served as the primary caregiver for the children during the marriage, in part because Jesse left for work before Erin or the children woke up. In the afternoons, Erin's older children helped supervise the children at issue in this appeal. Even though Jesse was available to provide after-school care, he was frequently absent. During the marriage, Jesse had a significant problem with alcohol and would frequently drink to excess, sometimes becoming belligerent and verbally abusive, and sometimes scaring the children. Erin attributed some of the drinking and other behaviors, including some suicidal ideation, to post traumatic stress disorder following Jesse's military service. Jesse had a gun and made suicidal statements in the presence of the children on at least

one occasion that required police intervention.  Jesse also was previously subject to a protective order due to conduct relating to a different ex-girlfriend.

Jesse's family is from the area, and the children enjoy spending time with their relatives.  They also spend time on Jesse's family farm.  After the parties broke up, Erin moved with the children to Lamoni, where they reside in close proximity to a school and church attended by the children.

Erin has made some claims that Jesse is abusive and violent, though she did not express present fear for herself or the children at trial.  She explained the course of events leading to a protective order before the dissolution, which included Jesse making "slitting of the throat" gestures at Erin after they separated.

For his part, Jesse has concerns about Erin allegedly using methamphetamine and dating a man who is using methamphetamine.  Although the record does not contain direct evidence of Erin using methamphetamine at the time of dissolution, the district court found that Erin lost a significant amount of weight and her paramour tested positive for methamphetamine.  The paramour, for at least some period of time, was residing in the home with Erin and the children, and there is some dispute as to whether he was still present after an Iowa Department of Health and Human Services (HHS) safety plan required him to not be around the children.  The same paramour is apparently restrained from seeing his own child by court order, the details of which do not appear in the record.  Erin tested negative for controlled substances on a hair panel, but she admitted at trial to being a past (allegedly twenty years prior) methamphetamine user.  Unrelated to the drug use, Erin also is the subject of a founded abuse report relating to supervision of her older children, from approximately one decade ago.

HHS testimony at the hearing raised some concerns about compliance with drug testing. For example, HHS twice came to the house while Erin's methamphetamine-using paramour was staying with her and the children, and the paramour declined to answer the door, later claiming he was asleep. This is despite the fact that the paramour was allegedly supervising the children at the time. Also, Erin delayed her drug testing approximately eighteen days, which an HHS worker testified could have been a ploy to delay until she was less likely to test positive. In contrast, Jesse took a drug test immediately upon request, and the results were negative.

The district court, with fairly terse explanation, reasoned that Erin should have physical care of the children because she was the historical primary caretaker, Jesse's work schedule begins very early in the day, and Erin's older children can help provide care for the children at issue in this appeal. The district court also expressed reservations about Erin being in the company of persons abusing methamphetamine and warned that if Erin uses or is around people who use methamphetamine, that would be a substantial change in circumstances warranting a modification.

This appeal by Jesse follows. Erin did not file a brief on appeal. *See* Iowa R. App. P. 6.901(1)(b) (providing an appellee may waive filing a brief).

## II.     Standard of Review

We review child-custody orders de novo. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). We ordinarily "give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them." *Id.* (internal citation omitted).

When physical care is at issue, our primary consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o). Our objective "is to place the child[] in the environment most likely to bring [the child] to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

### III.    Discussion

As a threshold matter, we note that the district court's terse explanation of its reasoning leaves us with limited ability to assess whether credibility findings played a part in its ruling on the custody question.

In our independent review, we have some concerns about both parents. Jesse's failure to acknowledge his alcohol abuse and suicidal ideations, whether service-related or otherwise, is a red flag. So is Erin's past use of methamphetamine, lack of immediate cooperation with drug testing, and continued association with a paramour who is confirmed to have recently used methamphetamine.

Given the record evidence and the limited options before us, we affirm placing physical care with Erin. Our reasoning is somewhat different than the district court's, and we do not fault Jesse for taking a job with an early start time, given his willingness to make alternate arrangements for the children. That said, the balance of evidence still favors physical care with Erin because even Jesse admits that Erin was the primary caregiver throughout the marriage, and our review of the record confirms that the best interests of the children includes continuity of care with Erin. *See id.* at 696 ("[S]tability and continuity of caregiving are important factors that must be considered in custody and care decisions.").

We have considered both the general and specific arguments made by Jesse on appeal, and we find they do not overpower the factors that weigh in favor of placing physical care with Erin. Contrary to Jesse's argument, we do not observe any legal error in the district court's evaluation of whether Erin supported Jesse's relationship with the children. We tend to agree with Jesse that the district court should have given more consideration to Jesse's extensive family support network in the area, as well as the positive effects a supportive extended family can have on children, but we find this insufficient to undermine the overall rationale for awarding Erin physical care. Last, we take seriously Jesse's arguments regarding what he describes as Erin's "poor judgment and instability," particularly with reference to her alleged drug use and association with persons using drugs, but we do not think the remedy is to modify the district court's decree to grant Jesse physical care.

Unlike the district court, we are not satisfied with only warning Erin to avoid methamphetamine in the future. "Methamphetamine is a scourge." *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017). The danger posed by methamphetamine is tremendous, and our courts see case after case where this drug rips families apart and endangers children. We have observed before that a parent with a history of drug use can endanger his or her children through "refusal to cut ties with known drug users." *In re A.R.*, No. 19-1840, 2020 WL 2488222, at *3 (Iowa Ct. App. May 13, 2020). Our supreme court has also admonished, "No parent should leave his [or her] small children in the care of a meth addict—the hazards are too great." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (citation omitted).

Given Erin's admission to past methamphetamine use, her suspect cooperation with drug testing, and the recent positive test result by her paramour, we are convinced there is sufficient evidence to warrant more than just a cautionary note. We find that, in order to serve the best interests of the children, placing physical care with Erin is only appropriate with conditions for drug testing and a requirement that she certify she is not associating with known drug users near the children or in the home. *See Kettler v. Kettler*, No. 21-0481, 2021 WL 4891086, at \*4–7 (Iowa Ct. App. Oct. 20, 2021) (affirming modification imposing indefinite drug-testing requirements for father, finding testing requirements were "necessary to ensure the safety of the children" and "in the children's best interests as they will help ensure the children are safe"); *see also In re H.H.*, No. 15-1011, 2015 WL 5578370, at \*2 (Iowa Ct. App. Sept. 23, 2015) ("Our courts have recognized the hazards of leaving children in the care of methamphetamine users."); *In re Marriage of Mace*, No. 07-0375, 2008 WL 239022, at \*1–2 (Iowa Ct. App. Jan. 30, 2008) (finding a parent's recent drug use, as shown in ongoing drug testing, was a substantial change in circumstances justifying a modification of physical care). This condition is necessary and appropriate because, "without the placement of conditions," the current custody arrangement carries a significant risk of "direct physical harm or significant emotional harm to the child, other children, or a parent*." In re Marriage of Rykhoek*, 525 N.W.2d 1, 5 (Iowa Ct. App. 1994).

Based on a review of our case law, we vest the district court with authority to regulate the drug-testing condition, rather than Jesse. The cases teach in part that we should avoid the potential for one party to have unilateral veto power over another's custody or visitation, through ordering tests or outright modifying

arrangements without court involvement. *See In re Marriage of Fite*, 485 N.W.2d 662, 664 (Iowa 1992); *Rykhoek*, 525 N.W.2d at 4. The order outlined below will avoid this pitfall.

We remand to the district court with directions to, after giving both parties notice and an opportunity to be heard, enter an order establishing a drug-testing and certification obligation for Erin. The order shall, at minimum, consider and address the following issues:

**(1) The schedule for drug testing.** The district court shall order drug testing on at least a quarterly basis, on dates to be determined by the district court.

**(2) Advance notice.** The district court shall determine how far in advance, if at all, Erin shall be informed of these dates.

**(3) Test type and administration.** The district court shall select an appropriate test type and test administrator. This selection may be based on consultation with appropriate agencies and input from the parties.

**(4) Payment for drug testing.** The district court shall order Erin to pay the costs of testing. If Erin cannot afford to pay for testing, she may petition the district court for such relief as the court deems appropriate, if any.

**(5) Certification regarding association with drug users.** The district court shall order Erin to provide quarterly certifications to the court, under penalty of perjury. The certification shall, at minimum, state that Erin has not knowingly invited any persons who have recently used methamphetamine into her home or allowed such persons to have contact with the children.

**(6) Reports to the court.** The district court shall provide for the test results to be promptly provided to the district court under circumstances that guarantee

reliability and appropriately protect the confidentiality of the documents. The district court shall also provide appropriate directions for the filing of Erin's certification. Jesse shall be granted access to the testing results and certification without need for further court order.

**(7) Duration of obligation.** The district court shall order the drug-testing and certification obligation to endure for at least one year, or longer if the court deems appropriate.

**(8) Further action.** The district court shall advise the parties in writing that any further court action related to the drug-testing or certification obligation must be initiated by the parties. We leave to the parties and district court to determine whether positive results or a false certification should result in further court proceedings (such as a modification action or contempt).

We find that these drug-testing conditions are necessary to further the best interests of the children and trust that the district court will take appropriate action if methamphetamine or other controlled substances endanger the children. We do not retain jurisdiction. Costs are assessed evenly between the parties.

**AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.**