# IN THE COURT OF APPEALS OF IOWA

No. 21-1727
Filed May 10, 2023

IN RE THE MARRIAGE OF SHAUNA LEA KERBY
AND SHAWN MICHAEL KERBY

Upon the Petition of
SHAUNA LEA KERBY,
      Petitioner-Appellant,

And Concerning
SHAWN MICHAEL KERBY,
      Respondent-Appellee.
_____

      Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.

      Shauna Kerby appeals orders reinstating her children's visits with their father following a period of suspension while he was incarcerated for federal drug crimes. **REVERSED AND REMANDED.**

      Christina I. Thompson of Phil Watson, P.C., Des Moines, for appellant.

      Cynthia D. Hucks of Box and Box Attorneys at Law, Ottumwa, for appellee.

      Heard by Bower, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

A mother of three children appeals orders reinstating visits with the children's father following a period of suspension while he was incarcerated for federal drug crimes.

## I.      *Background Facts and Proceedings*

Shauna and Shawn Kerby divorced in 2015.  The district court granted the parties joint legal custody of their three children and granted Shauna physical care, subject to visits with Shawn for six overnights per fourteen-day period.  In the intervening years, the parties engaged in extensive litigation, much of it addressing the consequences of Shawn's addiction to opiates.  That litigation informs the orders that are the subject of this appeal.

A year after the divorce, Shawn moved for temporary modification of his child-support obligation.  He attested that (1) his dentistry practice was shut down following a federal "investigation into questioned prescriptions for pain narcotics"; (2) he voluntarily surrendered his dentistry license pending the outcome of the investigation; and (3) he began outpatient treatment for his dependence on hydrocodone.  Shauna countered with a contempt application.  Following a hearing, the district court found Shawn in contempt for failing to pay his child support obligation of $4000 per month and for violating the dissolution decree in other respects.

Meanwhile, Shauna moved to Minnesota.  A stipulation was drafted stating Shauna would retain physical care of the children, with Shawn exercising some of his weekend visits in Minnesota rather than Iowa.  The parties further agreed that Shawn would be subject to random drug testing and would provide the results to

Shauna. The stipulation covered possible ongoing substance abuse by Shawn as follows: "If Shawn fails any test, or is arrested for any drug or alcohol related offense during that time, his parenting time provided for herein may be suspended by the Court, and the custodial provisions herein may be modified, upon application filed by Shauna." The stipulation also addressed Shawn's possible conviction, as follows:

> The parties will continue to share joint legal custody of the children. However, in the event that Shawn is convicted of any criminal offense in excess of a misdemeanor, such event shall constitute a material and substantial change in circumstances, and the court may have grounds to modify any order concerning the legal custody and/or parenting schedule provided for herein.

Shawn and his attorney signed the stipulation and filed it with the district court, together with an application to enforce it. Shauna resisted on the ground that Shawn knowingly concealed his indictment and arraignment on federal charges, rendering her participation in negotiations "not knowing and informed." She sought an order overruling the application and requiring Shawn's visits to be supervised in Minnesota pending final resolution of the federal charges.

The district court adopted the stipulation, except a provision delegating authority to a parenting coordinator. By this time, two years had elapsed since the parties' divorce.

Toward the end of 2017, Shauna filed an application to suspend visitation or grant supervised visitation on the ground that Shawn pled guilty to two federal charges, both felonies. Shawn resisted. The district court noted Shawn's convictions for (1) obtaining hydrocodone by misrepresentation, fraud, deception and subterfuge and (2) unlawful user and addict of a controlled substance in

possession of a firearm. The court also referenced his pretrial arrest and incarceration for violation of pretrial release terms and his twenty-month sentence and post-discharge supervised release. The court concluded Shawn's "incarceration constitut[ed] an emergency permitting immediate suspension of the parenting schedule." Shawn was granted authority "to seek reinstatement of his visitation/parenting time . . . upon written application."

Twenty-one months later, Shawn applied to modify the order suspending visitation time. He alleged he "ha[d] achieved and maintained sobriety, ha[d] achieved stability, and ha[d] been released from prison," and it was in the children's best interests that "parenting time be reinstated." The district court denied the motion but stated the ruling would be reconsidered at a hearing in two months.

Two months later, the district court found that Shawn "continue[d] to suffer from significant substance abuse issues." The court cited a discharge summary from a sobriety institute Shawn attended diagnosing him with "[a]lcohol [u]se [d]isorder-[s]evere" and stating Shawn "appear[ed] to have replaced his drug of choice, opiates, with alcohol." Also of concern to the court was a positive alcohol reading two weeks after his discharge from the facility, despite the facility's requirement of total abstinence. In the court's view, Shawn's lack of contact with the children for more than two years meant that initial contacts with them, "even telephonic contacts," would "be unsettling, at best, or traumatic, at worst." The court concluded Shawn was "not yet prepared to engage in those initial contacts." His request for temporary telephonic contact was denied.

Trial on Shawn's application to permanently modify the suspension order was held nine months later. Shawn testified he last had contact with the children

in 2018 and, in light of his lengthy absence, it "would be best" to have some sort of reunification process. He stated he "wouldn't have an issue" with in-person supervised visits. Shauna countered that reinstatement of visits was not in the children's best interests given the anxiety the children experienced when they had contact. She also cited Shawn's unsafe visitation practices, his convictions, and the potential for relapse.

In a March 2021 order, the district court granted Shawn's request to terminate the emergency suspension of his parenting time, subject to implementation of a professionally-supervised family reunification plan. Under the plan, the professional was to "work with this family to restore within a reasonable time [Shawn's] parenting time with the children." The court stated "any schedule" would have to "provide [Shawn] with substantial time with the children." The court ordered the parties to submit a proposed parenting schedule within two and one-half months.

That time frame came and went without updates from either party. Ultimately, Shauna filed a report recommending a Minnesota counseling service. She noted that Shawn was informed of the recommendation three weeks earlier but failed to respond. The district court scheduled the matter for hearing.

A status conference was conducted later in the summer of 2021. The court noted that the services of the identified counseling agency were retained but sessions had not yet commenced. The court scheduled another status conference for about two months later. Before the status conference, Shawn informed the court that intake sessions had been scheduled with both parties. At the status conference, the court found that the counseling service was "preparing a treatment

plan" but a draft of the plan had yet to be provided to the parties. The court scheduled "[a]nother status conference for October 5, 2021." The order stated, "It is the court's intent that upon approval of a treatment plan that is intended to reunite the children with their father, the court will enter a final order terminating active court supervision over the reunification process."

The final status conference occurred as scheduled, six months after the March 2021 order granting Shawn's request to modify the suspension of his visitation rights and ordering the retention of a family-reunification counselor. The conference was conducted remotely, lasted nineteen minutes, and was non-evidentiary. The parties discussed a reunification plan proposed by the retained counselor two weeks earlier. Although Shawn's attorney offered the plan as an exhibit, the exhibit was not formally admitted and is not part of our record.[1] Shauna, who represented herself and was not placed under oath, stated she made some "safety-related" revisions as well as other revisions to ensure she was "able to meet the needs of the counseling considering [her] other obligations." She said the counselor expected the reunification "might take six months to two years."

The district court expressed frustration with the pace of implementing the reunification plan. The court told Shawn's attorney to "prepare an order." Just then, Shauna dropped off the call, apparently without the court's knowledge. The court required the order to specify that the parties would obtain the treatment

---

[1] We believe its non-inclusion in the record was inadvertent. The parties included the reunification plan in the appendix. It contains a file-stamp, but our pleading and exhibit binders do not contain a corresponding document. While we could request correction of the record, our remand order renders such a request superfluous.

specified in the plan. The court then asked a question of Shauna. Shawn responded, "She's gone." The court continued, "Well, they shall comply with the provisions of that treatment plan. A violation, a failure to comply with the terms of the reunification plan may result in a finding of contempt of Court." The court also told Shawn's attorney to specify "a drop dead date" for completion of the reunification plan—possibly December 31, 2021—and include a "proposed visitation schedule." Counsel sought clarification as to whether the plan had to be completed by December 31, 2021. The court stated that was not what was meant and "[r]eunification therapy can continue past December 31, [2021]."

An order captioned, "[d]ecree [m]odifying [v]isitation" was filed on October 14, 2021. The order stated, "The proposed reunification therapy treatment plan should be approved and the court's active supervision over the reunification process should terminate." The order further stated the reunification plan would be made part of the decree and stated, "The parties shall immediately implement this treatment plan and continue with such treatment until maximum benefits have been attained," on pain of contempt. "Consistent with the treatment program," the parties were to "cooperate to provide [Shawn] with reasonable time with the children." Immediately following that portion of the order, the court included the following paragraph: "Regardless of status of reunification therapy, beginning on December 26, 2021, Shawn shall be entitled to in-person, unsupervised visitation with the minor children . . . ." The order specified a visitation schedule of every third weekend, holidays, every spring break, and five weeks in the summer. The order stated it was final. Shauna appealed.

## II.    Modification of Visitation

"The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of the evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95-96 (Iowa Ct. App. 1994) (citing *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).  There is no dispute that Shawn's release from prison constituted a material change of circumstances.  The only question is whether the October 2021 order was in the children's best interests.[2]

Shauna argues the order was contrary to the children's best interests.  In her view, it afforded Shawn "extremely liberal and unfettered access to the children approximately three months from the date of the hearing *regardless* of the pro[gr]ess made on the reunification therapy outlined in the detailed [reunification] plan . . . and adopted by the Court."  Although Shauna requests reversal of the visitation orders in their entirety, she does not alternatively challenge the requirement or contents of the reunification plan which, as noted, is not in our record.

The plan, imposed at Shawn's behest, was submitted after trial on his application to modify the visitation order.  We have no doubt about the court's authority to require it.  *See* Iowa Code § 598.41(1) (2021) (allowing the placement

---

[2] Shuana asks us to review the March 2021 order as well.  She concedes it is an interim order but argues that, together, they constitute "two halves of a final decision."  We agree the March 2021 order informs the October 2021 order.  But the order subject to review is the October 2021 order.  *Cf. In re Marriage of Denly,* 590 N.W.2d 48, 50 (Iowa 1999) (stating "temporary custody orders should not be considered final judgments for purposes of appeal").

of conditions on a parent's visitation rights to prevent "direct physical harm or significant emotional harm to the child"); *see also In re Marriage of Rykhoek*, 525 N.W.2d 1, 5 (Iowa Ct. App. 1994) ("Any conditions which are so imposed must be in the best interests of the child."); *In re Marriage of Makela*, No. 22-0304, 2022 WL 16985441, at *3 (Iowa Ct. App. Nov. 17, 2022) (stating testimony drawn from father's history "supported the district court's gradual implementation of a visitation plan"); *Kettler v. Kettler*, No. 21-0418, 2021 WL 4891086, at *4 (Iowa Ct. App. Oct. 20, 2021) (concluding modifications of decree provisions regarding a parent's "drug-testing" and "suspension of visitation" were "necessary to ensure the safety of the children").  There is also no question that the court had authority to enforce compliance with it, particularly in the face of the parties' halting efforts to abide by the March 2021 order.

That said, key portions of the October 2021 order lack evidentiary support. Even if we had the reunification plan before us, our de novo review reveals no testimony from the counselor or parents on (1) how or when "maximum benefits" would be attained under the plan, (2) what conduct could lead to a contempt finding, or (3) the circumstances under which Shawn should be afforded "reasonable time with the children" while complying with the reunification plan. Most critically, the record lacks evidentiary support for the seemingly contradictory provision categorically authorizing unsupervised visits within three months of the order.  Because the polestar of a visitation-modification action is the best interests of the children and we have no evidence to support a conclusion that categorical unsupervised visits are in the children's best interests, we reverse the October

2021 order. We remand for an evidentiary hearing to address the matters contained in the October 2021 order based on present circumstances.

In light of the reversal and remand, we find it unnecessary to address Shauna's contention that the district court engaged in ex parte communications with Shawn and his attorney after she dropped off the remote proceeding. As for both parents' requests for appellate attorney fees, we conclude neither is the prevailing party, and we deny both requests. *See* Iowa Code § 598.36 ("In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court.")

**REVERSED AND REMANDED.**