**IN THE COURT OF APPEALS OF IOWA**

No. 24-0981
Filed August 21, 2024

**IN THE INTEREST OF T.S.,**
**Minor Child,**

**L.K., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nichol,

Judge.

A mother appeals a bridge order entered in a child-in-need-of-assistance

proceeding. **AFFIRMED IN PART AND VACATED IN PART.**

Rachel Antonuccio of Waterloo Juvenile Public Defender's Office, Waterloo,

for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney

General, for appellee State.

Whitney L. Gessner of Gessner Law Office, Postville, attorney and guardian

ad litem for minor child.

Considered by Tabor, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

A mother appeals a bridge order entered in a child-in-need-of-assistance (CINA) proceeding. She challenges the portion of the order placing the child in the father's physical care, as well as the conditions placed on her visitation with the child. She also contends she was denied due process because she had to prepare her appeal with an incomplete transcript of the permanency hearing. We affirm the portion of the bridge order placing the child in the father's physical care but vacate the portion of the order imposing conditions on the mother's ability to exercise visitation with the child. We find no due process violation.

**I. Background Facts and Proceedings.**

The Iowa Department of Health and Human Services (HHS) learned that the mother gave birth to the child in June 2022. HHS was familiar with the mother, who was named as the perpetrator in two founded child abuse assessments from 2020. The same issues that led to those assessments resulted in the juvenile court terminating the mother's parental rights to two children in December 2021. Because of that history, HHS offered the mother services to prevent the child's removal. But the mother refused to engage in services, and the juvenile court removed the child from her custody.

The State petitioned for a CINA adjudication. The juvenile court granted the petition in August, finding a parent was imminently likely to neglect the child and the child was imminently likely to suffer harm because of a parent's failure to exercise a reasonable degree of care in supervising the child. The child was placed in family foster care.

HHS provided services to both the mother and the father. In June 2023, after a trial home placement, the juvenile court returned the child to the father's custody under HHS supervision. It granted the mother six more months to show she could regulate her emotions, remain sober, co-parent safely, solve problems, and manage crises. *See* Iowa Code § 232.104(2)(b) (allowing the court "to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order" after "enumerate[ing] the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").

By March 2024, HHS and the guardian ad litem agreed the safety concerns that led to the CINA adjudication had resolved and both parents could provide appropriate care for the child. The only remaining concern was the parents' inability to agree about custody and visitation. HHS recommended "a detailed bridge order outlining the expectations for on-going custody." The guardian ad litem recommended "the return of custody to both parents, with equal parenting time, and exchanges to be as infrequent as possible."

After a hearing, the juvenile court entered a decree addressing child custody, physical care, and visitation. The court granted the parents joint legal custody of the child. Finding that the parents "cannot agree on almost anything," the court determined that joint physical care is not in the child's best interests. It noted that the father has acted as the child's physical caretaker since May 2023 and resumed legal custody in June 2023. In contrast, the mother had just begun

unsupervised visits with the child. The juvenile court determined that placing the child in the father's physical care serves the child's best interests.

The juvenile court granted the mother visitation with the child on alternating weekends and holidays, as well as extended visitation in the summer, but it placed conditions on the visitation. The order requires that the mother demonstrate "emotional stability through the provision of attendance records for counseling and monitoring of any psychotropic medication." It allows the father to "require notice from [the mother's doctor] that the [mother] continues to take medication as prescribed." It also directs the mother "to execute the necessary release of information to allow the [father] to receive a copy of any mental health evaluation report and any other report prepared in conjunction with the evaluation or ongoing treatment, specifically to validate continued mental health medication management." Because the purposes of the dispositional order were accomplished and the child no longer needs supervision, the juvenile court terminated the dispositional order and transferred jurisdiction over the child's custody and visitation to the district court.

**II. Discussion.**

We review CINA proceedings de novo. *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021). We give weight to the juvenile court's fact findings, although they are not binding. *See id.* Our primary concern is the child's best interests. *See id.*

**A. Bridge Order.**

The juvenile court entered a bridge order, which closes a CINA case by transferring jurisdiction over a child's custody to the district court. *See* Iowa Code § 232.103A. The only matters the juvenile court can address in a bridge order are

"matters of custody, physical care, and visitation." *Id.* § 232.103A(3). The mother appeals the physical care and visitation provisions of the bridge order.

**1. Physical Care.**

The mother first challenges the decision to place the child in the father's physical care. She argues the child's best interests are served by joint physical care. In the alternative, the mother asks us to vacate the bridge order and continue the CINA proceedings for six months. *See id.* § 232.104(2)(b).

The parties agreed that at the time of the March 2024 permanency hearing, the purposes of the dispositional order had been accomplished and the child no longer needed the juvenile court's assistance. Because the child was no longer a CINA, the juvenile court terminated the CINA proceedings. Iowa Code §§ 232.103(4)(a) (providing that the court may terminate a dispositional order and release the child if "[t]he purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment"),.103A(1)(e) (conditioning the issuance of a bridge order on the juvenile court's determination that the CINA case can safely close). The only disagreement concerned physical care. The father and county attorney recommended granting the father physical care. The mother and guardian ad litem recommended joint physical care. HHS did not make a physical-care recommendation.

The juvenile court determined that joint physical care was not in the child's best interests, noting that the parents "have been argumentative, petty, and unable to get along" throughout the CINA proceedings.

> [The mother] requested and was granted a civil no contact order against [the father]. [The father] consented to the no contact order entry because he did not want to have contact with [the mother].

[HHS] hired a mediator to help these two parents reach an agreement about co-parenting. These parents cannot agree on almost anything. It is not in the best interests of [the child] for him to be put into the crucible of joint physical placement.

After reviewing the parents' history, the court found that the father has "demonstrated the longest period of safety and stability" and placed the child in his physical care.

We concur in the juvenile court's assessment. The mother's and father's inability to communicate, cooperate, and agree make joint physical care unfeasible. *See In re Marriage of Hansen*, 733 N.W.2d 683, 698, 699 (Iowa 2007) (listing the parents' ability "to communicate and show mutual respect," "the degree of conflict between parents," and "the degree to which the parents are in general agreement about their approach to daily matters" as important factors to consider in determining whether to grant joint physical care). Because joint physical care is inappropriate under the circumstances, we must select a physical caretaker. *See id.* at 700 ("Once it is decided that joint physical care is not in the best interest of the children, the court must next choose which caregiver should be awarded physical care."). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 695. We give considerable weight to "the factors of continuity, stability, and approximation." *Id.* at 700. Those factors favor the father. We affirm the bridge order's physical-care provision.

**2. Visitation.**

We turn then to the mother's challenge to the visitation provision of the bridge order. She contends that the restrictions imposed on her ability to exercise

visitation violate her constitutional rights. She argues that by making visitation contingent on giving the father access to her private medical records, the provision violates her right to privacy. She also argues that her due process rights were violated because she was not given notice that her ability to exercise visitation could be conditioned on giving the father access to her medical records.

Iowa Code section 232.106 allows the court in CINA proceedings to impose conditions on a parent if the conditions assure the protection of the child. *But see Ashenfelter v. Mulligan*, 792 N.W.2d 665, 674 (Iowa 2010) ("reach[ing] no conclusion regarding the ability of a court to order disclosure of medical or mental health records to the State in a CINA action"). Even assuming that section 232.106 allows the court to condition the mother's visitation with the child during the CINA proceedings on disclosure of her confidential medical and mental-health records, the CINA proceedings terminated with the issuance of the bridge order. If concerns about the child's safety continue, the criteria for the bridge order have not been met.[1] But the parties agreed those concerns have resolved, so the mother "is presumed to be a fit parent" and to act in the best interest of the child.[2]

---

[1] The court may place some conditions on a parent's visitation rights but "only when visitation without the placement of conditions is likely to result in direct physical harm or significant emotional harm to the child, other children, or a parent" and when the conditions imposed are in the best interests of the child. *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4–5 (Iowa Ct. App. 1994).

[2] In *Ashenfelter*, the supreme court rejected an attempt by grandparents who sought to procure a mother's medical and mental-health records in an action for visitation with their grandchild. 792 N.W.2d at 673–74. It noted that although the grandparents attempted to compare their interest in visitation with that of the State in a CINA action, a CINA assessment by the State determined that the mother's mental health did not warrant a CINA adjudication. *Id.* Thus, the grandparents' desire for visitation could not overcome the mother's constitutional right to privacy in her medical and mental-health records. *Id.* at 674; *see also In re Marriage of Mulligan*, No. 10-1752, 2011 WL 2420005, at *7 (Iowa Ct. App. June 15, 2011)

*Id.* at 673. On these facts, the child's best interests do not outweigh the mother's constitutional right of privacy in her medical and mental-health records. *See id.* (observing that "[t]he United States Supreme Court has suggested that a balancing test will never be appropriate in a civil case").

We vacate the portion of the bridge order imposing conditions on the mother's visitation with the child. If there are concerns about the status of the mother's mental health or medication compliance, they can be addressed in a modification action. *See In re Marriage of Fite*, 485 N.W.2d 662, 664 (Iowa 1992) (reversing portion of order imposing conditions on a father's visitation with his child and noting that if the father "behaves irresponsibly in the manner specified in the deleted conditions, his conduct may be made the subject of further proceedings in the district court and may be grounds for reduction or elimination altogether of his child visitation rights"); *see also* Iowa Code § 232.103A(6) (providing that a party requesting modification of a bridge order within one year of entry need only show modification is in the child's best interests).

**B. Transcript on Appeal.**

Finally, the mother contends she was denied due process because her appeal was prepared with an incomplete transcript of the permanency hearing. Rather than a certified court reporter contemporaneously transcribing the permanency hearing, there is a digital audio recording from which a transcript was later prepared. See Iowa Code § 232.94 ("Stenographic notes *or electronic . . .*

---

(concluding that "the district court abused its discretion by ordering a mother to produce statutorily and constitutionally protected medical and mental-health records in a child custody proceeding).

*recordings* shall be taken of all court hearings held pursuant to this subchapter unless waived by the parties." (emphasis added)). Because portions of the audio recording are inaudible, the transcript of the recording is incomplete. The mother contends that her due process rights were violated because she was forced to rely on the incomplete transcript while preparing her appeal.

An unavailable transcript "does not automatically entitle an appellant to a reversal." *In re T.V.*, 563 N.W.2d 612, 614 (Iowa 1997). The entire transcript is unnecessary if the record allows a full and fair review. *Id.* A good deal of the inaudible portion of the transcript concerns statements by the mother's attorney. Because the same attorney represents the mother on appeal and any missing arguments can be reiterated in the mother's brief, the missing portions of the transcript should not deprive the mother of a full and fair appellate review. *Id.* (emphasizing the importance of appellate counsel having a complete trial transcript when appellate and trial counsel are different). We also note that if any testimony or evidence was not fully captured in the transcript, the mother could have used the procedures set forth in Iowa Rules of Appellate Procedure 6.806 (to file a statement of evidence for the juvenile court to settle) or 6.807 (to request the court to correct a deficient or incomplete transcript). She has not invoked either rule here. We find no due process violation.

**C. Conclusion.**

We affirm the issuance of a bridge order granting the parents joint legal custody of the child and placing the child in the father's physical care. We vacate

the portion of the order conditioning the mother's ability to exercise visitation with the child on access to the mother's confidential medical and mental-health records.

**AFFIRMED IN PART AND VACATED IN PART.**