# IN THE COURT OF APPEALS OF IOWA

No. 22-1254
Filed October 11, 2023

IN RE THE MARRIAGE OF BRADLEY LYNN COWGER
AND LESLIE ANNE COWGER

Upon the Petition of
BRADLEY LYNN COWGER,
        Petitioner-Appellee,

And Concerning
LESLIE ANNE COWGER, n/k/a LESLIE ANNE NELSON,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, David Porter, Judge.


        Leslie Cowger appeals the ruling modifying the decree dissolving her

marriage to Bradley Cowger. **AFFIRMED AS MODIFIED AND REMANDED.**


        Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for

appellant.

        Bradley Cowger, Indianola, self-represented appellee.


        Considered by Greer, P.J., Buller, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**MULLINS, Senior Judge.**

Leslie Cowger appeals a district court ruling modifying the decree dissolving her marriage to Bradley (Brad) Cowger.[1] She argues the court erred by not modifying Brad's visitation schedule when it modified the decree to provide her sole legal custody and physical care; in calculating child support; and by not ordering Brad to pay her trial attorney fees and the court costs, including guardian ad litem fees. Leslie also requests an award of appellate attorney fees.

I.      **Background**

The parties married in 2006. The marriage produced four children, born between 2008 and 2013. The marriage was dissolved by stipulated decree in January 2016. Pursuant to the parties' stipulation, they were granted joint legal custody and joint physical care, with each party having "approximately one-half of the physical care of the minor children" and the parties determining "a schedule that works best for the children," which may be altered "as they both agree."[2] Child support was waived.

There has been pretty much ongoing litigation between the parties ever since. Roughly eight months after the decree was entered, Brad filed a petition to

---

[1] Initially, Brad appealed and Leslie cross-appealed. The deputy clerk of the appellate courts later dismissed Brad's appeal for failure to timely cure a notice of default relating to the filing and service of a combined certificate. In a separate order, the supreme court designated Leslie as the appellant and Brad as the appellee. Later, the supreme court struck Brad's appellate brief for failure to comply with appellate rules and ordered him to file an amended brief. When he failed to do so, the supreme court entered another order directing the appeal to proceed without Brad's participation.

[2] The stipulation also specifically provided: "At present time, the parties agree to share custody with each party having care during alternating weeks. It is anticipated, however, that the parties each will have parenting time with the children throughout each week, even when the week is not their assigned week."

modify, requesting "full custody" and apparently asserting Leslie was suicidal and unsafe and abandoned the children.[3] Brad voluntarily dismissed that application about a month later. In December 2016, Leslie filed a modification petition of her own. She requested the children be placed in her physical care based on Brad moving out of the children's school district and the parties' demonstrated "inability to cooperate or communicate in the fashion necessary to support shared physical care." Brad counterclaimed for physical care, asserting he "is better able to care for the children" and placement in his physical care would be in their best interests.

In its August 2017 ruling denying modification, the district court found that, while Brad moved from Urbandale to Indianola, "the parenting schedule has continued to function with little apparent problems" and "nothing concrete or specific was offered" in relation to Leslie's concern for the children having to get up too early to make it to school in Urbandale. While the parties' "mutual dislike for each other" was clear, the court found "[t]his dynamic appears to have been firmly in place as the marriage deteriorated and prior to the dissolution." And while both parties painted one another as inadequate parents, the court found none of these complaints "were documented with any hard evidence or reliable corroboration from independent witnesses."

In the coming months, the parties filed competing contempt applications. Both applications accused the other of violating legal-custody requirements of the decree. Brad additionally alleged Leslie "does not allow contact on her weeks." Leslie additionally alleged Brad speaks negatively about her in front of the children,

---

[3] Brad filed a contempt application along with this petition, which was the third such application filed by Brad since the decree.

4

he refuses to allow the children to enroll in extracurricular activities, and he denied Leslie her right to two weeks of uninterrupted parenting time. Those applications were dismissed by stipulation agreement, which required, among other things, appointment of a parenting coordinator and any further litigation for modification or contempt to be preceded by mediation.

In October 2020—after yet another contempt pursuit initiated by Brad was denied by the district court—Leslie filed the petition for modification precipitating this appeal, in which she requested modification of the decree to provide her sole legal custody and physical care, as well as corresponding modifications to child support and the parenting schedule. Leslie alleged the parties could no longer effectively co-parent due to Brad's lack of respect for her, his unwillingness to reach agreements on important matters, and his refusal to act to foster feelings of affection and respect between the children and Leslie. As a result of various competing motions between the parties, the court appointed a custody evaluator, a parenting therapist, and a guardian ad litem (GAL) for the children.

A court-ordered custody evaluation was conducted and completed in February 2021. In all, the evaluator found that "[t]he parents' unhealthy coparenting relationship makes mutual agreement for the sake of the children impossible." She also concluded "[t]here are factors present in this case that would suggest sole legal custody should be granted to Leslie." As to physical care, the evaluator recommend modification of the decree to place the children in Leslie's physical care, with Brad exercising parenting time six days out of every fourteen-day period.

The matter proceeded to trial in January 2022. The evidence presented shows that the conflict between the parties is so intense that it's almost unbelievable. We need not detail the contents of the hundreds of pages of written communications between the parties. In summary, those communications show Brad has absolutely no respect for Leslie, and he variously places the blame for any conflict on her. While Brad has pegged Leslie as a dictator, the totality of the evidence shows Brad has served in that role in pretty much every dispute. To put it simply, it has been Brad's way or the highway. And it's quite clear that Brad will allow the children's best interests to fall by the wayside if it means he has to let Leslie have her way on anything. This extends to matters involving the children's education, medical treatment, extracurricular activities, discipline, and pretty much everything else that affects the children's day-to-day wellbeing. Leslie testified that when the children come to her home from Brad's, they are disrespectful to and argumentative with her for several days. She also testified that whenever she and Brad have a disagreement, the children have something to say about its subject matter the next time she sees them.

Leslie explained the children have been suffering as a result of the discord between her and Brad. The parties have attempted to improve their issues through the use of a parenting coordinator and participation in co-parenting counseling. Their counselor discharged them from therapy because, according to Leslie, "Brad tried to dictate services and . . . was not willing to put in the work for a co-parenting relationship." Brad is distrustful of medical professionals, and he objects to the children undergoing routine medical and dental care, such as their receipt of vaccinations or cavity fillings. On one occasion, Brad outright refused to allow one

of the children to have two cavities filled.  He berated Leslie in text messages about this treatment and refused to allow it unless he got an "untainted" second opinion. And when Leslie presented Brad with a medical recommendation about one of the children's ongoing problems, Brad refused to participate, claiming it was "insanity." He also threatened Leslie with a contempt proceeding if she followed the recommendation.  Brad has also gone well out of his way to make sure Leslie can't be involved in the children's medical care.  His reason for doing so is that he doesn't want to be around Leslie.  On another occasion, Brad complained about one of the children not being able to read and blamed this alleged deficiency on Leslie.  When Leslie presented Brad with reading assistance for that child and asked for Brad's help with paying for it, Brad responded "that's fucking retarded" and advised, "I'm not in on this so either u pay in full or take me to court."

Brad unquestionably talks negatively about Leslie in front of the children. Brad tells Leslie that she is a terrible mother and the children would be better off without her.  The children's advisement to Leslie that Brad hates her indicates Brad shares these sentiments with the children.  The way Brad treats Leslie, which the children are obviously privy to, sets an extremely poor example to say the least. This conduct has started rubbing off on the older child, who mirrors Brad's misogynistic mindset toward not only Leslie, but also his female teachers at school. Brad also canceled a trip to Disney World with the children and told the children he couldn't afford it because the money needed to be used to pay for their GAL in this proceeding.  However, Brad still took his wife and other children on that trip. Brad stated no remorse for any of his conduct in his trial testimony.  Instead, he indicated his actions are entirely acceptable.

Along with her request for sole legal custody and physical care, Leslie requested that Brad's parenting time be reduced to alternating weekends from Thursday through Monday when school is in session and then fifty-fifty in the summer on an alternating weekly basis. The GAL requested that Leslie be awarded sole legal custody and physical care. As to parenting time, the GAL proposed that Brad be given visitation with the children six out of every fourteen nights during the school year, with parenting time alternating on a weekly basis during the summer. At trial, Brad unequivocally testified that if his time with the children was reduced by any amount, he would no longer have any involvement with the children. In other words, he would be "checking out." After hearing the evidence at trial, the GAL changed her proposal to encompass Brad only receiving parenting time with the children four out of every fourteen nights during the school year.

In its ruling, the district court found the significant deterioration of the parties' ability to communicate served as a substantial, material, and permanent change in circumstances warranting modification. The court also determined the change affected the children's welfare and Leslie demonstrated a superior ability to minister to the children's needs. So the court modified the decree to provide Leslie sole legal custody and physical care. However, the court ordered the parenting time would be as the parties agree or, if they are unable to agree, Brad "shall continue to enjoy parenting time as set forth in the parties' stipulated decree," which essentially provided the parties with equal parenting time. The court also recalculated child support, ordered each party to pay for their own attorney fees, and assessed court costs equally between the parties.

Leslie appeals.

## II.      Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). The best interest of the children is our primary consideration. Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

## III.     Discussion

### A.     Parenting Time

Leslie argues the court erred in declining to accompany its modification of physical care and legal custody in her favor with a corresponding modification of the parenting-time schedule. As noted, the district court did not modify the parenting schedule provided in the original decree, which provided the parties with equal parenting time. Leslie submits sole legal custody and physical care with one parent "is legally and factually irreconcilable with an award of equal parenting time or the actual exercise of joint physical care."

Joint physical care "is only authorized when coupled with joint legal custody." *In re Marriage of Beasley*, No. 21-1986, 2022 WL 16985437, at *8 (Iowa Ct. App. Nov. 17, 2022); *accord* Iowa Code § 598.41(5)(a) (2020) (premising the court's discretion to award joint physical care upon an award of joint legal custody). Because Leslie was awarded sole legal custody, a joint-physical-care arrangement is not an option. Although the court awarded Leslie physical care, the ruling had the effect of ordering that the parties equally share parenting time, the substance of which is no change from the previously ordered joint physical care.

Physical care and joint physical care are two different things. The former provides one parent with a superior "right and responsibility to maintain a home for the minor child[ren] and provide for the routine care of the child[ren]." Iowa Code § 598.1(7); *see In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007) ("The parent awarded physical care maintains the primary residence and has the right to determine the myriad of details associated with routine living, including such things as what clothes the children wear, when they go to bed, with whom they associate or date, etc."); *In re Marriage of Rhykoek*, 525 N.W.2d 1, 3 (Iowa Ct. App. 1994) ("The parent who is granted primary physical care has the right and responsibility to maintain the principal home of the minor child and provide for the routine care of the child. The parent having physical care must, as between the parties, have the final say concerning where the children's home will be." (internal citations omitted)). Under joint physical care, however, "neither parent has physical care rights superior to those of the other parent." Iowa Code § 598.1(4). Instead, both parents have equal parental rights and responsibilities, "including but not limited to shared parenting time with the child[ren], maintaining homes for the child[ren], [and] providing routine care for the child[ren]." *Id.*

While the district court granted Leslie physical care, we agree with Leslie that the court's decision to not disturb the parenting schedule providing the parties with equal parenting time is the functional equivalent of not disturbing the joint-physical-care arrangement.[4] *See In re Marriage of Brown*, 778 N.W.2d 47, 50–51 (Iowa Ct. App. 2009) (rejecting argument that a decree "established a 'primary

---

[4] With equal parenting time remaining intact, the only real difference arises in relation to calculation of child support. *See* Iowa Ct. R. 9.14(3).

physical care' arrangement" when it contained "[a] 'Shared Parenting Time' schedule" that provided the parents with essentially equal parenting time); *see also In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007) ("Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child.").

It does not appear that either of Iowa's appellate courts have addressed whether an award of physical care to one parent in a contested case is legally incompatible with an equal-parenting-time schedule, as Leslie argues it is. However, we find that question need not be answered in this case. Assuming without deciding that physical care with one parent could co-exist with equal parenting time between the parties in a contested setting, we conclude this is not the case for it because equal parenting time is contrary to the children's best interests. *See Hansen*, 733 N.W.2d at 695 (noting decisions relating to physical care must "be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child"); *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992) ("In establishing visitation rights, our governing consideration is, once again, the best interest of the children.").

Arrangements involving equal parenting time require "good communication between the parents as well as mutual respect." *Hynick*, 727 N.W.2d at 579. We unquestionably do not have that here. As described above, the conflict between the parties is on a totally different level than the acrimony common between divorced parents. The evidence presented shows this is driven by Brad's relentless desire for control. Brad has absolutely no respect for Leslie. He talks negatively about Leslie in front of the children. He makes the children privy to

disputes between the parties. It's clear that Brad's pursuit for control takes precedence over the children's basic needs. It's also clear that Brad has absolutely no understanding of the long-term damage he is causing to his children by continuing to fuel the fire. Perhaps most problematic, Brad appears to believe his behavior is perfectly acceptable. The district court's conclusion that the foregoing problems have begun to negatively affect the children is not disputed in this appeal. So we conclude that continuing the equal-parenting-time schedule is not in the children's best interests.

Having concluded equal parenting time should not continue, we are left with determining Brad's visitation. "Liberal visitation rights are in the best interests of the children" and children "should be assured the opportunity for the maximum continuing physical and emotional contact with *both* parents." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993); *accord* Iowa Code § 598.41(1)(a). "Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994).

On our review, we find the following visitation schedule for Brad to be in the best interests of the children and modify the district court's ruling to reflect the same. Brad's visitation, year round, shall be every other weekend from Thursday at the time when school lets out until Monday at the time when school begins. If there is no school on a day when visitation begins or ends—due to holidays or seasonal breaks from school, including summer—then Brad's visitation begins when school would normally let out on Thursday and ends when school would

normally begin on Monday. Brad is responsible for transporting the children in relation to beginning and ending his regular visitation. He shall also ensure the children attend the extracurricular activities during his time and provide transportation to and from the same. The provisions of the decree concerning two weeks of exclusive parenting time, holidays, birthdays, family events, and spring break are left intact and take precedence over Brad's regular visitation schedule. In addition, Brad shall be allowed a ten-day summer vacation visitation, subject to him providing notice of the dates to Leslie by April 15 prior to each such visitation. This schedule allows the children to live in a stable environment with Leslie while allowing them to continue their relationship with Brad. *See In re Marriage of Curtis*, No. 18-1535, 2019 WL 3729275, at *7 (Iowa Ct. App. Aug. 7, 2019). This visitation schedule may be altered if Leslie and Brad agree. We modify the district court's ruling to reflect all of the foregoing.

We find it important to note our acknowledgement of Brad's testimony that he would be "checking out" as these children's father if his parenting time was reduced. Our decision, guided by statutory and case law, requires custody determinations that are in the best interests of the children. We decline to let Brad's stated position dictate continuing a parenting-time arrangement that is not in the children's best interests. We are hopeful Brad reconsiders and decides to be a present father consistent with his children's best interests.

### B. Child Support

Leslie challenges the district court's child-support calculation, submitting the court's guidelines worksheet contains various errors. We agree the errors she highlights were made. Plugging the proper figures and factors into the current

guidelines[5] and removing Brad's extraordinary visitation credit, his monthly obligation is $1821.48 so long as all four children remain eligible, $1621.54 when three children remain eligible, $1379.75 when two children remain eligible, and $928.42 when only one child remains eligible.[6]  We modify the district court's ruling to impose these obligations.  This modification is retroactive to the time of the entry of the district court's modification ruling.

### C.    Trial Attorney Fees

Leslie requested that Brad be ordered to pay the totality of her attorney fees, which amounted to $22,605.  Without explanation, the district court denied this request and ordered each party to pay for their own attorney fees, although Brad represented himself.  On appeal, Leslie argues the district court erred by not ordering Brad to pay her trial attorney fees.

We review the denial of an award of trial attorney fees for an abuse of discretion.  *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).  "Trial courts have considerable discretion in awarding attorney fees."  *In re Marriage of*

---

[5] *See* Iowa Ct. R. 9.1 ("The child support guidelines contained in this chapter are hereby adopted, effective January 1, 2022.  The guidelines shall apply to cases pending January 1, 2022."); *In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.2 (Iowa Ct. App. 1996) (noting pending cases for purposes of child support guidelines include those pending on appeal).

[6] Like the district court, we use self-employment income of $115,000 with a qualified-business-income deduction for Brad and wage income of $40,500 for Leslie.  Then Brad is given three qualified additional dependents for his other three biological children he does not share with Leslie.  Brad's filing status is married filing separately while Leslie's is head of household, with each party claiming two children as dependents (at first) and the children's health coverage being through hawk-i.  For the step downs, we have also done recalculations and averaging to reach the amounts for when only certain children can be claimed as dependents and the greater number of exemptions shifts between the parties in alternating years.

*Witten*, 672 N.W.2d 768, 784 (Iowa 2003) (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). "An award of attorney's fees is based on the parties respective needs and ability to pay." *In re Marriage of O'Rourke*, 547 N.W.2d 864, 867 (Iowa Ct. App. 1996).

Leslie was the prevailing party in the district court, which entitles to her an award of attorney fees. *See In re Marriage of McCurnin*, 681 N.W.2d 322, 332 (Iowa 2004) ("Because Jennifer was successful as to her application to modify the dissolution decree . . . , she is entitled to trial and appellate attorney fees."); *Beasley*, 2022 WL 16985437, at *8 (noting status of requester as prevailing party is a "major factor" supporting an award of attorney fees).

That brings us to Leslie's need and Brad's ability to pay. At the time of trial, Leslie did not have full-time employment and had limited income. Brad, on the other hand, has a much higher income. Even ignoring his non-liquid, income-producing business assets, Brad still has access to liquid assets well in excess of $1,000,000. The need and ability-to-pay factors clearly weigh in favor of an award of attorney fees to Leslie, so we agree the district court abused its discretion in denying the request. *See In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995) (concluding award was proper where factors weighed in favor of an award and no reason for refusing the request appeared in the record).

On our review of Leslie's attorney fee affidavit and itemization submitted in the district court, we determine Brad should pay for $12,000 of her attorney fees, and we modify the district court's ruling to reflect the same. In reaching this determination, we have considered reasonableness and to what extent the

itemizations relate to matters ancillary to modification.[7]  We remand to the district court to enter judgment against Brad accordingly.

### D.    Court Costs

Leslie also requested that the court tax court costs, including GAL fees, against Brad.  The court divided them equally between the parties.  "The rule is well established that in an equity action the trial court has a large discretion in the matter of taxing costs and we will not ordinarily interfere therewith."  *Wymer v. Dagnillo*, 162 N.W.2d 514, 519 (Iowa 1968).  But "[w]hile we are slow to interfere with a district court's discretionary call, we do so when" the factors weigh against the court's decision.  *In re Marriage of Conrad*, No. 03-0079, 2003 WL 22345577, at *2 (Iowa Ct. App. Oct. 15, 2003).

Given the disparity in the parties' income and assets and Leslie's status as the prevailing party, we conclude Brad should have been responsible for the court costs.  *See id.*  Because Brad is not indigent, he is also responsible for the entirety of the GAL fees.  *See* Iowa Code § 598.12(3).  We modify the district court's ruling to reflect our determination on court costs, and we remand for entry of judgment against Brad for the same.

### E.    Appellate Attorney Fees

Leslie also requests an award of appellate attorney fees, although she does not provide a specific amount for her request or a fee affidavit or itemization on appeal.  An award of appellate attorney fees is not a matter of right but rests within

---

[7] We have also factored in that counsel estimated trial would take nearly two full days, but it only ended up taking one full day plus a little more than one hour the second day.

the appellate court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). The court considers "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In consideration of these factors, we conclude Leslie is entitled to an award of appellate attorney fees. But because she did not submit an affidavit or fee itemization to support her request, we remand the issue of appellate attorney fees to the district court to determine a reasonable award. *See In re Marriage of Heiar*, 954 N.W.2d 464, 473–74 (Iowa Ct. App. 2020) ("[W]e are unable to determine a reasonable award without more specific details of how the fees were incurred for this appeal.").

## IV. Conclusion

We modify the district court's parenting-time schedule as detailed above. We also modify Brad's child-support obligation to reflect errors assigned by Leslie and removal of Brad's extraordinary-visitation credit. We conclude Leslie was entitled to an award of trial attorney fees in the amount of $12,000 and court costs, including GAL fees, should have been taxed against Brad, so we modify the court's ruling accordingly and remand to the district court to enter judgment against Brad for these amounts. Lastly, we find Leslie is entitled to an award of appellate attorney fees, and we remand to the district court to determine a reasonable award. Costs on appeal are taxed to Brad.

**AFFIRMED AS MODIFIED AND REMANDED.**